Brien VOLPE, et al.,
Plaintiffs, Appellees,

v.

PRUDENTIAL PROPERTY AND CASU-
ALTY INSURANCE COMPANY,
Defendant, Appellant.

No. 86–1035.

United States Court of Appeals,
First Circuit.

Submitted May 8, 1986.

Decided Sept. 4, 1986.

Mark L. Mallory, Linda E. Fraas and
Law Offices of Kenneth G. Bouchard, P.A.,
Manchester, N.H., on brief, for defendant,
appellant.

Steven E. Hengen and Ransmeier &
Spellman, Concord, N.H., on brief, for plain-
tiff, appellee Brien Volpe.

Before BREYER and TORRUELLA, Cir-
cuit Judges, and MALETZ,* Senior Judge.

BREYER, Circuit Judge.

Defendant Prudential Property and Cas-
ualty Insurance Company (Prudential) ap-
peals from the district court's declaratory
judgment that it must provide liability cov-
erage for its insured, Carolyn Blondeau,
for an accident claim made against her by
Brien Volpe. Prudential also appeals the
district court's award to Blondeau of attor-
neys' fees for the declaratory judgment
action. For the reasons that follow, we
affirm the district court's decision as to
coverage but we reverse its decision about
attorneys' fees.

## I.

Volpe and Blondeau are fellow plaintiffs
in the declaratory judgment now on appeal
but are opponents in a pending tort action
in federal court in New Hampshire. Volpe,
a passenger in a vehicle driven by David
Federichi, was injured in a collision with a
Chevrolet Camaro driven by Tommy Briggs
and formally owned by, and registered to,

---

\* Of the United States Court of International    Trade, sitting by designation.

Tommy's father, Frank Briggs. At the time of the accident, Blondeau was a passenger in the Camaro. Volpe alleges that Blondeau negligently entrusted the Camaro to Tommy Briggs, then her boyfriend, whom she knew to be a reckless and dangerous driver.

Volpe and Blondeau brought this declaratory judgment action to determine their rights under an "easy reading" insurance policy issued to Blondeau by Prudential. Prudential denied Blondeau coverage for Volpe's claim, citing the following paragraph:

> You're insured while using a car you don't own. Relatives living in your household are insured while using a passenger car or trailer which is owned by someone else or any organization when it is reasonable to expect that the owner has given permission to use it and it is used in the way intended by the owner. This non-owned passenger car or trailer has the same coverages as any one of your cars. *But there is no coverage for cars regularly used by you or such relatives.*

(Emphasis added.) Prudential acknowledged that Blondeau was using the Briggs' car when she was merely a passenger, but it argued that Blondeau "regularly used" the Briggs' car and that she therefore fell within the exclusion quoted in the last sentence.

The district court, after considering the parties' cross-motions for summary judgment, did not decide whether or not the underlined phrase deprived Blondeau of coverage. Instead the court accepted a different argument that Volpe had made to show coverage. Volpe quoted a paragraph contained in a section on "losses we won't pay for." The paragraph is titled "cars for hire" and says:

> We won't pay for any accident that happens while a car this part covers is being used as a taxi or car for hire. You're covered, though, if you're responsible for an accident while you're a passenger in a car you don't own.

The court read the second sentence of the "cars for hire" paragraph in light of New Hampshire's policy of construing ambiguities against the insurer. It found that the sentence could reasonably be interpreted to provide coverage for Blondeau when she is responsible for an accident while a passenger in *any* car she doesn't own, including Briggs' car. The court therefore ordered Prudential to defend Blondeau in the underlying tort action brought by Volpe. It also held that Blondeau was entitled to attorneys' fees pursuant to New Hampshire Rev.Stat.Ann. § 491:22-b (1983). Prudential has appealed.

## II.

We agree with the district court that in New Hampshire "an ambiguous insurance policy will be construed in favor of the insured and against the insurer." *Trombly v. Blue Cross/Blue Shield of New Hampshire-Vermont,* 120 N.H. 764, 771, 423 A.2d 980, 985 (1980). We also agree with its conclusion regarding coverage. We are not able to agree with the court, however, (nor have we agreed among ourselves) about whether the sentence to which the court pointed is ambiguous. While one of us is in substantial agreement with the district court's construction of the policy, two of us believe that the position of the sentence in a paragraph entitled "cars for hire" would prevent any reasonable person from thinking that the sentence affirmatively extends coverage beyond what the remaining paragraphs of the policy provide. *See* Appendix. The purported ambiguity arises only if the sentence is read out of context, disregarding its place in the policy as a whole. We hesitate to push the insurance industry toward spelling out each qualification every time a policy mentions a qualified term—as we might do by insisting that the second sentence here say "in a taxi or car for hire you don't own." Unnecessary verbiage interferes with easy reading no less than ambiguity, and we ought not gratuitously to encourage it.

■ Our views concerning the existence of ambiguity make no legal *difference in*

this case, however, for we conclude on other grounds that Prudential must provide coverage. The parties agree that Blondeau's policy insures her while "in someone else's car" unless the car is one she or her relatives "regularly used." On the basis of the record, even if we read it in a light most favorable to Prudential, *Early v. Eastern Transfer,* 699 F.2d 552, 554 (1st Cir.), *cert. denied,* 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), the "regular use" exception does not apply.

Some form of the "regular use" exclusion is commonly found in automobile insurance policies. It implicitly recognizes that:

> a policy which would give to an insured who simply took out a policy on a single owned car, coverage on any number of cars not owned by him, but furnished for his regular use, just as if he owned them, would be ruinous to an insurance company.... [W]here more than one owned automobile is included, as a rule the insurance premium is larger.

*Globe Indemnity Co. v. Teixeira,* 230 F.Supp. 451, 455 (D.Hawaii 1964), *aff'd,* 349 F.2d 502 (9th Cir.1965). The exclusion therefore protects the insurer from multiple exposure to liability for which the insured pays only one premium. *See United Services Automobile Ass'n v. Couch,* 643 S.W.2d 668, 672 (Tenn.Ct.App.1982); *Kenilworth Ins. Co. v. Cole,* 587 S.W.2d 93, 100 (Mo.Ct.App.1979). Its purpose and effect

> is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so. More specifically the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one household may have two or more automobiles actually or potentially used

interchangeably but with only one particular automobile insured.

*Aler v. Travelers Indemnity Co.,* 92 F.Supp. 620, 623 (D.Md.1950); *see also* 12A *Couch on Insurance* 2d § 45:1074 (1981 & Supp.1985); Annot., 8 A.L.R.4th 387 (1981). It prevents "abuse, by precluding the insured and his family from regularly driving two or more cars for the price of one policy." *Highlands Ins. Co. v. Universal Underwriters Ins. Co.,* 92 Cal.App.3d 171, 176, 154 Cal.Rptr. 683, 687 (1979).

Both parties rely on Blondeau's deposition to support their conflicting interpretations of the contested term. Prudential emphasizes Blondeau's testimony that she sometimes used the Camaro for her own errands; that she asked for permission to use the car as a courtesy, and that she was never denied permission; that she drove the car three or four times a week, including twice a week alone; and that she drove the car 60 percent of the time when she and Tommy used the Camaro together. On these grounds, Prudential asserts that Blondeau's use of the Camaro was "steady," "methodical," "constant," and "systematic." *See, e.g., Winterwerp v. Allstate Ins. Co.,* 277 Md. 714, 357 A.2d 350 (1976); *Motorists Mut. Ins. Co. v. Sandford,* 8 Ohio App.2d 259, 221 N.E.2d 596 (1966). Volpe emphasizes Blondeau's testimony that she owned her own vehicle, a Chevrolet Citation, and that she drove the Citation to work each day; that her own car was her primary means of transportation; that Tommy Briggs was the most frequent user of the Camaro; that she always asked permission to use the car; and that for two of the seven months Tommy owned the car—when their relationship temporarily soured—she did not use the Camaro at all. On these bases, Volpe says that Blondeau's use of the Camaro satisfies neither the "principal use" nor the "control" tests adopted by some courts as determinants of regular use. *See, e.g., Highlands Ins. Co. v. Universal Underwriters Ins. Co.,* 92 Cal.App.3d 171, 154 Cal.Rptr. 683 (1979); *Southern Railway Co. v. State Farm Mut. Auto. Ins. Co.,* 357 F.Supp. 810

**4**

(N.D.Ga.1972), *aff'd*, 477 F.2d 49 (5th Cir. 1973).

In our view, it does not matter whether one characterizes the proper legal test as one of "steady," "methodical" use or of "principal" use or "control." The facts here—which are basically undisputed—cannot in any event justify invoking the "regular use" exception. Blondeau did not use the car to go to or come from work; she did not use it at work; she did not have exclusive use of the car for any significant part of the day or week; she did not have unrestricted use of the car; she did not use it interchangeably with a car of her own; and the car did not belong to a member of her household. These facts taken together show that Blondeau would not reasonably have expected to pay an extra premium to cover her use of the Briggs' car. *See Commercial Union Assurance Cos. v. Gollan*, 118 N.H. 744, 745, 394 A.2d 839, 841 (1978); *Commercial Union Assurance Cos. v. Derry*, 118 N.H. 469, 471, 387 A.2d 1171, 1172 (1978); *Brown v. Laconia*, 118 N.H. 376, 378, 386 A.2d 1276, 1277 (1978). We also doubt that Frank Briggs would have expected to pay an additional premium for her use, as she was not a member of his household. We do not see how the insurer (given the present policy) can have reasonably expected to collect an extra premium for Blondeau's use of the Briggs' car. Thus, when we consider these facts in light of the purposes of the "regular use" provision, we find that provision inapplicable. This finding is, if anything, strengthened by New Hampshire's adoption of the majority rule that ambiguous policies are to be construed in favor of the insured. *See Trombly*, 120 N.H. at 771, 423 A.2d at 985 (remarking that the rule of construction favoring the insured goes "one step further" than the reasonable expectations test used in *Gollan, Derry,* and *Brown*).

New Hampshire case law on "regular use" provisions supports this view. When facts have shown use sufficiently frequent, systematic or authoritative as to have made it reasonable for an insurer to expect an extra premium to insure an additional car, the New Hampshire Supreme Court has found "regular use." *See Spaulding v. Concord Gen. Mut. Ins. Co.*, 122 N.H. 515, 446 A.2d 1172 (1982) (holding that a car owned by a jailed friend was furnished for the insured's regular use when he had free use of the car, used it often for his own purposes, parked it in his driveway, and contributed to its upkeep); *Davy v. Merchants Mut. Cas. Co.*, 97 N.H. 236, 85 A.2d 388 (1952) (holding that cars provided by the insured's employer for use during the insured's work as a full-time taxi driver were furnished for his regular use). When facts have made it unreasonable to expect the premium, the New Hampshire court has held the exception not to apply. *See Allstate Ins. Co. v. Chatigny*, 103 N.H. 81, 166 A.2d 122 (1960) (holding that a friend's car was not furnished for regular use when the insured did not take the car home, did not generally use it for himself, and used it only with permission). We have no reason to believe that the New Hampshire Supreme Court would extend the scope of the "regular use" exclusion beyond what is needed to satisfy its basic purposes. Hence we conclude that the exclusion does not apply to the facts described in Blondeau's deposition—the facts at issue here. Prudential therefore must provide coverage.

### III.

The district court, relying on N.H. Rev.Stat.Ann. § 491:22–b (1983), awarded Blondeau reasonable attorneys' fees. The statute provides:

> In any action to determine coverage of an insurance policy pursuant to RSA 491:22, if the insured prevails in such action, he shall receive court costs and reasonable attorneys' fees from the insurer.

This action, however, was not commenced "pursuant to RSA 491:22," the New Hampshire declaratory judgment statute. Rather, the action was brought under the federal declaratory judgment statute, 28 U.S.C. § 2201 (1982), which does not provide for awards of attorneys' fees to the prevailing

insured. The New Hampshire Supreme Court has declared that the State declaratory judgment remedy, with its accompanying attorneys' fees, is not available to litigants proceeding in federal court. *Jackson v. Federal Ins. Co.*, 127 N.H. 230, 498 A.2d 757, 759 (1985) ("the legislature did not intend to avail litigants in the federal courts of our State declaratory judgment remedy for resolving insurance coverage questions"). Since Blondeau could not have invoked § 491:22, she cannot claim the attorneys' fees that that statute makes available to a prevailing insured. *Jackson v. Federal Ins. Co., supra.* And, the district court erred in holding the contrary.

For the foregoing reasons, the district court's judgment that Blondeau is entitled to insurance coverage is affirmed; the award of attorneys' fees is reversed.

*Affirmed as modified.*

APPENDIX

# part 3
# if you injure
# others or damage
# their property . . .

## our obligations to you (part 3)

### liability

We'll pay, on behalf of persons insured under this part, all sums they become legally obligated to pay as damages because of a car accident in which someone else is injured or killed. Or in which someone else's property is damaged or destroyed.

### first aid

We'll pay back anyone insured under this part the cost of immediate and necessary first aid to others at the scene of the accident involving a car insured under this part.

### bail bonds

If you or anyone else insured under this part is arrested as a result of the accident or the violation of a traffic law and must put up bail, we'll pay up to $250 for the cost of a bail bond. The insured must first get the bond.

### legal defense

If other persons claim that you or anyone else insured under this part injured them or damaged their property in the accident, we can settle these claims out of court, if we want to. If they sue, we'll defend against claims covered under this policy, even if these claims aren't true. But if we wish, we can settle the suit out of court.

### release of attachment bonds

If the person suing you or anyone else insured under this part ties up your property through a legal "attachment," we'll pay the premium of a bond to release that "attachment." But the amount of the bond can not be more than the maximum amount shown for the applicable coverage under this part shown on the Declarations Page.

### judgment

After the case is decided, we'll pay the amount which the court decides you or anyone else is responsible for, up to the maximum amount shown for this part on the Declarations Page. We'll pay any court costs you may be responsible for. We'll also pay all interest on the amount for which the court judges you or any other insured responsible that builds up between the time the court decides the amount and the time we pay the amount which we're obligated to pay.

### expenses

We'll pay any reasonable bills connected with the defense of you or any other insured incurred at our request, such as travel expenses to attend court. But we won't pay more than $50 per day for actual net wages lost if the insured has to take time off from work.

### appeal bonds

We'll pay the cost of necessary appeal bonds if we decide to appeal the case to a higher court.

## your obligations to us (part 3)

### cooperation

All persons insured under this part must cooperate with us in any way we reasonably request in settling claims under this part. Cooperation includes attending hearings and trials, helping in suing others who are responsible for the accident, giving evidence, helping us get witnesses to attend a trial and so on. If anyone voluntarily makes any payments, assumes any obligations, or incurs any expenses except for first aid to others at the scene of the accident, we won't be responsible for reimbursement.

### right of recovery

If we pay for a loss under this part, we acquire the right to get back the amount we paid from anyone responsible for the loss (except persons insured under this part). Anyone insured under

this part must help us to do this in any reasonable way we ask. No one insured under this part may do anything to interfere with this right.

### action against us

No one insured under this part may bring any legal action against us unless all obligations under this policy have been fulfilled. You must also wait until the amount of the settlement has been determined, either in court or by agreement among the insured, us, and the person making the claim. No person is entitled to include us in any legal action against you. No one insured under this part may involve us in a suit as a defendant. Our obligations aren't changed in any way by the bankruptcy of any insured.

### what cars part 3 covers

### cars described on the declarations Page

This part covers all cars for which a premium charge for this coverage is shown on the Declarations Page.

### replacement cars

If, during the current policy period, you acquire ownership of a passenger car or a truck with a one ton or smaller capacity, not used in any business except farming, to replace a car covered under this part, the newly acquired car is automatically covered under this part for the remainder of the policy period. The new car has the same coverage as the car it replaced had.

### additional cars

if, during the current policy period, you acquire ownership of another passenger car or a truck as described above in addition to those covered under this part, this part covers the new car, too. But you have to let us know within 30 days after you get the new car that you want it insured under this policy and not under some other policy issued by us. If you don't notify us, it won't be covered. All your other passenger cars and trucks as described above must be insured with us for this part to cover the additional car.

### trailers

This part covers all trailers that are designed to be pulled by a passenger car. The trailer may be used with a passenger car or a truck as described above, but it may not be used with any other kind of car for business. This part also covers farm equipment pulled by a truck as described above. Under this part, when a trailer is attached to a car, the trailer and the car are considered to be one car.

### substitute cars

If you can't use one of your own cars because it is being serviced, breaks down or is damaged in an accident, this part covers a car you borrow (with the owner's permission) to use temporarily while your car is being repaired or replaced. The borrowed car has the same coverage under this part that the car that is out of service has.

### who is insured (part 3)

### in your car

You and anyone living in your household are insured while using a car this part covers. Any persons you give permission to use this car are insured as long as they use it in the way you *intended when you gave them permission*. We also insure any other person or organization who might be held responsible for your use of a car this part covers, for its use by someone living in your household, or for its use by someone using it with your permission.

### in someone else's car

You're insured while using a car you don't own. Relatives living in your household are insured while using a passenger car or trailer which is owned by someone else or any organization when it is reasonable to expect that the owner has given permission to use it and it is used in the way intended by the owner. This non-owned passenger car or trailer has the same coverages as any one of your cars. But there is no coverage for cars regularly used by you or such relatives.

### losses we won't pay for (part 3)

#### cars for hire

We won't pay for any accident that happens while a car this part covers is being used as a taxi or car for hire. You're covered, though, if you're responsible for an accident while you're a passenger in a car you don't own.

#### intentional damage

We won't pay for any injury or damage caused intentionally.

#### nuclear liability

We won't pay for any accident covered by a nuclear energy liability policy or that would have been covered by any such policy if its maximum amount hadn't been exceeded.

#### farm machinery

We won't pay for injury or damage caused by use of farm machinery.

#### your employees

We won't pay for injuries suffered by any of your employees while they're on the job. But injury suffered by domestic employees is covered under this part if they're not covered and don't have to be covered under workers' compensation.

#### fellow employees

If anyone insured under this part (for example, people living in your household or people to whom you give permission to use your car) injures a fellow employee while using a car in his or her employer's business, we won't pay for the injury. However, you are covered if you injure a fellow employee.

#### auto business

We won't pay for injury or damage caused by anyone using a car in any automobile business (such as selling, repairing, servicing, storing or parking cars). But you, anyone living in your household, or any business associates (for whose use of the car you may be held legally responsible) are insured while using any of your cars covered under this part.

#### other business

We won't pay for injury or damage caused by anyone using someone else's car in your business or occupation or that of anyone else living in your household, unless it is a passenger car being used by you or your private driver, a trailer as described above used with someone else's passenger car, or a trailer as described above used with a car covered by this part.

#### your property

We won't pay for any damage to property you or any other insured owns or are transporting. Nor will we pay for damage to property rented to you or anyone else living in your household or which you or they have charge of except a residence or garage you or they rent from someone else.

#### newly acquired car

If you acquire ownership of another car while covered by this policy, even if such car qualifies as a replacement or additional car as described in this part, we won't pay for damage caused by that car if you have another insurance policy that covers it.

#### relatives and regularly used cars

We won't pay for injury or damage caused by anyone using a car (not covered under this part) owned by a relative living in your household. Nor by anyone using a car (not covered under this part) which you don't own if the car is regularly used by you or such relatives.

### how we'll settle a claim (part 3)

#### amount—injury: each person

The amount shown on the Declarations Page under "BODILY INJURY LIABILITY—EACH PERSON" is the maximum amount we'll pay under this part for each person injured in an occurrence.

**—injury: each occurrence**
The amount shown on the Declarations Page under "BODILY INJURY LIABILITY—EACH OCCURRENCE" is the maximum total amount we'll pay under this part in any one occurrence, regardless of how many persons were injured.

**—damage to property**
The amount shown on the Declarations Page under "PROPERTY DAMAGE LIABILITY—EACH OCCURRENCE" is the maximum amount we'll pay under this part for all the property damaged in any one occurrence, including the loss of its use.

**more than one car**
If this part covers more than one car, the amounts shown for this part on the Declarations Page apply separately to each car. But the insuring of more than one car will not increase the amount payable for any one occurrence.

**more than one insured person**
insurance under this part covers separately each person injured under this part against whom a claim is made. We won't pay more than the maximum amounts shown for this part on the Declarations Page even though more than one insured person is involved.

**to whom payments are made**
Once the amount of the settlement has been determined, the person making the claim against you can collect that amount from us— up to the amounts shown for this part on the Declarations Page.

**other insurance—your car**
If you or anyone else insured under this part has other insurance that covers a loss under this part, we'll pay our proportionate share of the loss. But we won't pay for a loss caused by a newly acquired (additional or replacement) car if you have another insurance policy that covers it.

**other insurance—someone else's car**
In the case of cars you don't own, including substitute cars, we'll only pay that part of the damages that is more than the amount payable under any other insurance that covers the loss.

**financial responsibility laws (part 3)**
If we certify this policy as a proof of financial responsibility in keeping with the laws of your state, the coverage provided under this part will comply completely with all the requirements of your state's law as to the extent of coverage and the limits required.