**TOWN OF ALLENSTOWN,**
Plaintiff, Appellant,

v.

**NATIONAL CASUALTY COMPANY,**
Defendant, Appellee.

No. 94–1106.

United States Court of Appeals,
First Circuit.

Heard June 8, 1994.

Decided Sept. 30, 1994.

Glenn R. Milner with whom Cook & Molan, P.A., Concord, NH, was on brief, for appellant.

John A. Lassey with whom Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, NH, was on brief, for appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

In May 1986, an officer of the Allenstown, New Hampshire, Police Department arrested Paul Cutting for a number of traffic offenses. At trial Cutting was acquitted of all charges. In April 1988, counsel for Cutting and his wife wrote a letter to the Allenstown Board of Selectmen advising that his clients were making a claim for damages against the town, arising from the arrest.

At that time the National Casualty Company had in force a comprehensive law enforcement liability policy protecting Allenstown and its employees against claims of the kind made by the Cuttings. National Casualty opened a file on the incident and obtained from the town copies of various documents relating to the Cutting arrest. In June 1988 the Cuttings brought a civil rights action against the town and the arresting officer in the federal district court in New Hampshire.

When the federal suit was filed, the Cuttings served copies of their summons and complaint on the town. The National Casu-

alty policy provided if a claim is made or suit brought against the insured, the insured "shall immediately forward to the Company every demand, notice, summons or other process" received by the insured; the policy made compliance with this requirement a condition precedent to any suit against National Casualty. Allenstown contends that it mailed the summons and complaint to National Casualty about eight days after it received them; National Casualty says that it never received the papers and denies that they were mailed.

Neither the town nor National Casualty appeared to defend against the Cuttings' suit, and a default judgment was entered. After a hearing on damages, the district court in March 1989 entered judgment for $424,909.88 in favor of the Cuttings, including compensatory damages, punitive damages and attorneys' fees. After a year's wait, Fed.R.Civ.P. 60, the Cuttings obtained a writ of execution in April 1990. Allenstown then moved for relief from the default judgment. In August 1990, the district court denied the motion. On appeal this court affirmed. *Cutting v. Town of Allenstown*, 936 F.2d 18 (1st Cir.1991).

In May 1990, after the writ of execution had issued, National Casualty learned—assertedly, for the first time—that the Cuttings filed their threatened suit. Not long afterwards, Allenstown wrote to National Casualty requesting it to provide coverage for the Cuttings' law suit and the judgment they had obtained. In June 1990, National Casualty declined to do so on the ground that the town had failed to notify National Casualty of the law suit's filing in a timely fashion and had failed immediately to forward the summons and complaint as required by the policy.

Allenstown then sued National Casualty in New Hampshire state court seeking a declaratory judgment under N.H.Rev.Stat.Ann. § 491:22 that National Casualty was required to provide coverage for the Cuttings' suit. Section 491:22 permits declaratory actions to determine insurance coverage, if such an action is brought within six months of the underlying suit that seeks to impose liability on the insured. Section 491:22–a provides that in an action under section 491:22, "the

burden of proof concerning the coverage shall be upon the insurer...." There is also a provision for attorneys' fees. N.H.Rev. Stat.Ann. § 491:22–b.

National Casualty removed the town's declaratory action against it to federal district court in New Hampshire on grounds of diversity. Thereafter, the town amended its complaint to include claims for breach of contract and bad faith against National Casualty. After a number of delays because of reassignment of the case from one judge to another, and finally to a third, the trial commenced on November 30, 1993.

At trial, the town presented testimony of one of its police officers that he had mailed the summons and complaint in the Cuttings' suit to National Casualty within two weeks after they had been served on the town. A witness for National Casualty testified that no such documents had been received and that the company had no record that the suit had been filed. There was also some, but not conclusive, evidence that might suggest that the officer who claimed to have mailed the summons and complaint might have partly misaddressed it. Under these circumstances, the burden of proof has assumed some importance.

Well before trial, in July 1993, the district court had ruled that section 491:22, and its ancillary burden shifting and attorney's fee provisions, did not apply in this case. The court ruled that under New Hampshire law, a declaratory action under section 491:22 could be brought to determine insurance coverage only where the *underlying* action to impose liability on the insured had been brought in New Hampshire state court. The district court also took the view that where the statute did not apply, the burden under New Hampshire law was upon the insured to establish coverage.

After the close of all of the evidence, the district court submitted the town's contract claim to the jury which found in favor of National Casualty.[1] The district court treated the request for declaratory relief as a matter to be determined by the court. But, following the jury's lead, the trial judge ruled in favor of National Casualty, holding that the town "did not, by a preponderance of the evidence, establish that the suit papers in this case were immediately forwarded."[2] The town now appeals to this court.

The principal issue on appeal stems from the district court's decision that section 491:22, including its burden-shifting provision, did not apply in this case. At all times pertinent here, section 491:22 allowed a declaratory judgment action if sought within six months "after the filing of the writ which gives rise to the question," *i.e.*, the writ in the underlying liability action—here, the Cuttings' law suit. Because New Hampshire state-court actions are commenced by the filing of a writ and federal actions by the filing of a complaint, the New Hampshire Supreme Court had held in 1985 that "[t]he plain language of the statute [section 491:22] clearly applies only to State actions." *Jackson v. Federal Ins. Co.*, 127 N.H. 230, 498 A.2d 757, 759 (1985).

*Jackson* involved a declaratory action in state court where the underlying liability suit had been brought in federal court. A year later, this court applied *Jackson* to bar a declaratory action under section 491:22 brought in *federal* court; as in *Jackson*, the underlying liability suit had been brought in federal court. *Volpe v. Prudential Property & Casualty Ins. Co.*, 802 F.2d 1 (1st Cir. 1986). It might have been enough in *Volpe* to say that the federal action was barred because (as in *Jackson*) the underlying suit had been brought in federal court, but this court in *Volpe* went even further and held that section 491:22 was "not available to litigants proceeding in federal court." *Id.* at 5.

The implication of *Volpe* was that the federal court would not entertain a section 491:22 action even if the underlying liability suit was brought in state court. This conclu-

---

**1.** The bad faith claim was not submitted to the jury because the district court ruled, after the close of the town's evidence, that as a matter of law judgment on this claim should be entered in favor of National Casualty.

**2.** The district court had, of course, already ruled the declaratory relief was not available under section 491:22; but it considered declaratory relief to be available under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

sion was not a careless extension of *Jackson.* Although *Jackson*'s plain language argument rested on the statute's reference to a "writ"—focusing attention on the forum of the underlying suit—*Jackson* had also described section 491:22 as a "court cleaning bill," saying that the bill was "intended to expedite procedures in the State courts." 498 A.2d at 759.

■ Following *Jackson* and *Volpe,* the New Hampshire state legislature amended the declaratory judgment statute by adding section 491:22–c, which provides:

> The remedy of declaratory judgment to determine the coverage of a liability insurance policy under RSA 491:22, 22–a, and 22–b shall also be available in the United States district court for the district of New Hampshire when the court may properly adjudicate the matter under the laws of the United States.

This amendment, in force at the time that Allenstown brought its declaratory judgment against National Casualty, is the focus of the present appeal. The town asserts that the amendment meant that a section 491:22 action can be brought in federal court, regardless whether the underlying liability suit was brought in state or federal court. National Casualty, by contrast, claims that the amendment merely makes the section 491:22 remedy available in federal courts to precisely the same extent that it would be available in New Hampshire state courts—that is, when the underlying liability suit was brought in a New Hampshire state court.

The district court agreed with National Casualty's reading, and we take the same view. The bare language of section 491:22–c is not conclusive. It is perfectly consistent with National Casualty's reading; but arguably the language is general enough so that it is also consistent with the town's reading. The problem for the town is that whatever the bare language of the new section, the New Hampshire Supreme Court in 1992 held "that RSA 491:22 applies only to underlying suits brought in our State courts." *Scully's Auto–Marine Upholstery, Inc. v. Peerless*

*Ins. Co.,* 136 N.H. 65, 611 A.2d 635, 636 (1992).

*Scully* was a declaratory action brought in the New Hampshire state court involving underlying liability suits both in federal district court and in Maine state court. Although decided after section 491:22–c became effective, *Scully* made no reference to the amendment but simply reiterated the court's earlier reasoning in *Jackson.* What we have, therefore, is a flat declaration that section 491:22 does not apply unless the underlying liability suit is brought in New Hampshire state court. *Accord Town of Peterborough v. Hartford Fire Ins. Co.,* 824 F.Supp. 1102, 1107 (D.N.H.1993). Unfortunately for the town, the Cuttings' suit was brought in federal court.

Allenstown urges in its brief that the legislative history of section 491:22–c shows that it was intended to permit a section 491:22 action in federal court even where the underlying liability suit was brought in federal court. The legislative history is something of a tangle; a broad expansion of section 491:22 was originally proposed, but the version enacted was a narrower one supported by the insurance industry. But even if the legislative history were more clearly favorable to Allenstown than it appears to be, *Scully* is a holding of New Hampshire's highest court construing a New Hampshire statute. We are bound by that court's determination. *E.g., Della Grotta v. Rhode Island,* 781 F.2d 343, 347 (1st Cir.1986).[3]

We turn now to the town's second assignment of error. The town argues that, even if section 491:22's burden-shifting provision did not apply in this case, New Hampshire common law still places the burden of proof on the insurer to prove that the insured provided a required notice of suit. Here, of course, the district judge placed the burden of proof on the insured both when he charged the jury on the contract claim and when he decided the declaratory action himself.

There is some dispute about whether the town has preserved its common-law argument. It made no objection to the charge on

**3.** In April 1994, the state legislature again amended section 491:22, effective January 1, 1995, to say that a section 491:22 action can be brought "even though the action giving rise to the coverage question is brought in a federal court or another [non New Hampshire] state court." R.S.A. § 491:22, as amended by 1994 N.H. Laws ch. 37. No one claims that the amendment itself applies retroactively to the present case.

this issue, as required by Fed.R.Civ.P. 51, and such failures to object normally preclude arguing the point on appeal. On the other hand, the district court also made the same ruling on the declaratory action, which is merely the obverse of the contract claim, and Rule 51 does not govern legal objections in bench trials. Here, the town certainly made its position clear to the district court in advance of its decision on declaratory relief.

■ Accordingly, we think it best to consider the town's common-law arguments on the merits, but on the merits we reject it. Section 491:22 aside, *Lumbermens Mutual Casualty Co. v. Oliver*, 115 N.H. 141, 335 A.2d 666 (1975), explicitly places the burden of showing notice upon the insured where notice is a condition in the policy. If New Hampshire law were otherwise, it is difficult to see why New Hampshire would have had to enact a separate provision (section 491:22-b) shifting the burden to the insurer in declaratory actions. In all events, *Lumbermens* is explicit: "The insured bears the burden of showing that notice of the accident was given [to the insurer] as soon as reasonably possible." *Id.* at 668; *accord Sutton Mutual Ins. Co. v. Notre Dame Arena*, 108 N.H. 437, 237 A.2d 676, 679 (1968).

The town's argument to the contrary is based entirely upon *White Mountain Construction Co. v. Transamerica Insurance Co.*, 137 N.H. 478, 631 A.2d 907 (1993). *White* involved the question whether a duty to defend arose when the insurer had notice of a suit or only when it had notice *and* a request for assistance. The burden of proof as to notice was not even explicitly discussed in *White*, apparently because notice was evident from the facts. See 631 A.2d at 484. The town's attempt to extend *White*, because it cited cases from a state where the burden of disproving notice may lie on the insurer, is inventive but not persuasive.

■ The third issue raised by the town on its appeal concerns its bad faith claim, an independent cause of action that the district court withdrew from the jury after the close of the town's evidence. Under New Hamp-

shire law, there are different types of good faith requirements; pertinent here is the precept that a good faith obligation may be inferred where a contract allows "the defendant a degree of discretion in performance tantamount to a power to deprive the plaintiff of a substantial proportion of the agreement's value." *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 562 A.2d 187, 193 (1989).[4] Under this rubric, the town sought to submit to the jury a set of interrelated arguments.

To summarize, the town urged that the good faith requirement had not been met in this case because National Casualty had notice of a threatened law suit and failed ever to contact the Cuttings' lawyer, in spite of the strong likelihood that the suit would be brought; the company did not instruct the town as to what to do in the event that a complaint was served; the company never told the town that it had previously been sent a letter (the Cuttings' attorney's letter threatening suit) which had been improperly addressed; and the company closed its file without ever contacting the Cuttings or their lawyer. On appeal, the town argues that there was enough in this cluster of charges to submit the matter to the jury.

To enter judgment on this claim for National Casualty as a matter of law, the district judge had to and did find that no reasonable jury could find in favor of the town on the evidence presented, and we review this determination *de novo. See Peckham v. Continental Casualty Insurance Co.*, 895 F.2d 830 (1st Cir.1990). If the "good faith" label is taken literally, there is no evidence whatever from which a jury could infer that National Casualty acted in bad faith in the sense of conscious wrongdoing or reckless disregard. The town's only hope lies in diluting the good faith requirement to one of reasonableness. It must be admitted that *Centronics* does refer at one point to the question whether "the defendant's exercise of discretion exceeded the limits of reasonableness." 562 A.2d at 193.

■ Reading *Centronics* as a whole and taking account of the other cited New Hamp-

---

4. *See also Seaward Constr. Co. v. City of Rochester*, 118 N.H. 128, 383 A.2d 707 (1978) (city under duty to seek federal funding where such funding is a condition of payment to the contrac-tor); *Lawton v. Great Southwest Fire Insurance Co.*, 118 N.H. 607, 392 A.2d 576 (1978) (insurer's discretion to determine the time of payment limited to a commercially reasonable time).

shire decisions on good faith requirements in contract cases, we think that the town's claim does not fit the cubby hole described by these cases. The notice provisions of the town's policy do not confer on the insurance company any latitude or discretion, the situation for which the pertinent good faith duty appears to have been crafted. The reasonableness reference in *Centronics* appears to be an adjunct concept; where the defendant takes, or declines to take, action pursuant to discretionary authority, commercial reasonableness may measure how far the defendant can go.

Finally, we think the town's reading of the cases would create a highly improbable untethered obligation of care. Here, the most one can say is that if National Casualty had been a little more aggressive and alert, it might have saved the town the consequences of the town's own breach of its explicit obligation to forward the pleadings. Even if National Casualty could in some measure be described as "negligent" in this respect—a point we need not decide—the policy imposed no such general duty of care on National Casualty.

Contracts are, after all, specific agreements to take specific steps to accomplish particular results, and those commitments are the central measure of each party's responsibility. With diffidence, the courts have implied or imposed ancillary obligations (such as good faith requirements or implied warranties) in discrete situations. But the unlimited implication of new, free-floating duties is a matter in which courts have to be very careful,. lest they undo the bargain struck by the parties. Here, the town failed to perform an important, expressly stated condition of coverage. This is one risk that the policy did not cover.

The fourth and last claim made by the town is that the district court erred in instructing the jury as to the meaning of the policy's requirement that the insured "immediately" forward the suit papers to the insurer. The district court softened this requirement considerably in explaining that under New Hampshire law the term "immediately" was not to be given its literal meaning. Instead, the law provides that an insured has fulfilled its duty to immediately forward suit papers if it used due diligence under the circumstances of the case in forwarding the suit papers, and the papers were forwarded without unnecessary or unreasonable delay. Whether the insured forwarded the suit papers with due diligence and without unnecessary or unreasonable delay must be determined by considering the totality of the surrounding facts and circumstances.

The town objected to the use of the term "due diligence" prior to the district court's instructions, but the trial judge rejected the objection. The town did not renew its objection after the charge was given, even though Fed.R.Civ.P. 51 requires such a further objection in order to preserve the point on appeal. Here, the trial judge told the parties at the pre-charge conference that their objections would be preserved without renewal of the charge and further directed the parties not to renew the same objections after the charge was given.

We have said that Rule 51 cannot be altered by the district court and that "[o]bjections cannot be carried forward" even where the trial judge assures the parties that objections raised at the pre-charge conference will be preserved. *McGrath v. Spirito,* 733 F.2d 967, 969 (1st Cir.1984); *see also Carrillo v. Westbulk,* 514 F.2d 1214, 1219 (1st Cir.), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 385 (1975). In this case, however, the district court not only assured the parties that their objections were preserved but also told them not to raise the objections again after the instructions. It would be harsh, indeed, to punish the town for obeying the trial judge.

■ But on the merits, we think there is little to the town's argument. The "due diligence" phrase actually comes from a New Hampshire case which, while elderly, is directed to the very question of what constitutes "immediate" notice. *See Ward v. Maryland Casualty Co.,* 71 N.H. 262, 51 A. 900 (1902). The town objects that due diligence is merely an example of immediate notice and unfairly emphasizes the conduct of the insured rather than the totality of the circumstances. It seems to us that the conduct of the insured is normally the precise question posed by a requirement that the insured provide immediate notice.

One can probably imagine the unusual case where the insured did not exercise due diligence in giving notice of a law suit while at the same time this notice was timely received (*e.g.*, from other sources). In this case, no such alternative source of knowledge is alleged. Further, we have no reason to think that the jury was confused in this case by any hypothetical difference between "due diligence" and "reasonableness under all the circumstances." In short, as to the instruction on timeliness, we think there was neither error nor prejudice.

*Affirmed.*