Tierney, J.
Matthew Friedman was driving a car owned and insured by his father when he had an accident which injured a passenger in his car, Mark Chicoine. Plaintiff RLI Insurance Company (RLI) issued an “umbrella” insurance policy to Matthew Friedman’s father, Harold Friedman. Defendant Hanover Insurance Company (Hanover) issued an insurance policy for two cars driven by Matthew Friedman’s mother, Laura Friedman. Mark Chicoine (the passenger) and his family filed a civil action for damages against Matthew Friedman (the Chicoine action)[1] which was ultimately settled. RLI now seeks a declaration that Hanover is obligated to indemnify Matthew Friedman for the underlying accident, that the Hanover policy is primary to the RLI policy and that RLI is entitled to recover from Hanover the amount it paid in settlement of the Chicoine action. For the reasons discussed below, Defendant’s Motion for Summary Judgment is allowed and Plaintiffs Motion for Summary Judgment is denied.
BACKGROUND
The following facts are not disputed. Matthew Friedman was driving his father’s Mazda RX-7 (RX-7) on January 3, 1988, when he was involved in a single car accident in which Mark Chicoine was injured. Matthew Friedman was visiting his parents in Massachusetts while on hiatus from his school in Florida. During this and other visits to his parents’ home in Massachusetts, Matthew Friedman used vehicles belonging to his parents.[2] Matthew used the VW Bug to drive to work during the day and the RX-7 during evening excursions as the Bug had no heat. He used these two cars on a daily basis.[3] Hanover insured neither the RX-7 nor the VW Bug.
RLI eventually paid Mark Chicoine, the passenger in the RX-7 $550,000 in settlement of his claim(s) arising from the accident.[4] In this action RLI seeks a declaration that Hanover is obligated to indemnify Matthew Friedman for the accident pursuant to the insurance policy Hanover issued to Laura Friedman. The Hanover policy excludes coverage for injuries resulting from accidents involving autos which an insured “uses regularly” unless the auto is listed as a covered auto.[5]
DISCUSSION
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Mass.R.Civ.P. 56(c). Where both parties have moved for summary judgment and there is no disputed issue of material fact judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
In two Massachusetts cases a “regular use" coverage exclusion in an automobile insurance policy has been held to bar coverage, though in contexts slightly different from the facts presented here. Turner v. Aetna Casualty & Surety Co., 36 Mass. 921 (1994) (rescript); Galvin v. Arnica Mut. Ins. Co., 11 Mass.App.Ct. 457 (1981). In Turner, the insured routinely borrowed her boyfriend’s car to drive to work and for errands. 36 Mass.App.Ct. at 921-22. The Court of Appeals held that it was “reasonably inferable” that she relied on the vehicle exclusively to perform her daily routine and that when she did not borrow it, she relied on the boyfriend to give her a ride. Id. at 923-24. This “regular *371 use” barred the insured from coverage under her parents’ automobile policy. Id. at 924. In Galvin, the insured was injured in an accident while on duty in a police car. 11 Mass.App.Ct. at 457. The car was one of several in a pool of police cruisers to which he was randomly assigned. Id. at 458. The court found that Galvin “regularly used” all vehicles in the pool, and that the exclusion barred his recovery under his personal automobile insurance. Id. at 460-62.
Both Galvin and Turner acknowledge the underlying purpose of the regular use exclusion: to provide coverage for an insured’s occasional use of another vehicle without any additional premium while excluding from coverage consistent use which would increase the insurer’s risk, without an attendant increase in premiums. 11 Mass.App.Ct. at 459; 36 Mass.App. at 923.
This case is factually distinct from both Turner and Galvin. Matthew Friedman did not use the RX-7 as his exclusive means of transportation as was the case in Turner, he also used at least one other vehicle (the VW Bug) with regularity. Another difference is that in Turner, the insured used the car as part of a daily routine over a period of several years. Matthew Friedman, by contrast, used the RX-7 mainly while on school vacations. Also, though the RX-7 was one of several cars which Matthew Friedman had authorization from his parents to drive, there is an obvious difference between an employer assigning a fleet vehicle, as was the case in Galvin, and a parent giving a (grown) child permission to use any of a group of family vehicles.
While acknowledging these factual distinctions, the Court must also heed the Appeals Court’s admonition in Turner that the trial court judge had taken too narrow a view of the “regular use” exclusion. 36 Mass.App.Ct. at 923. Viewing Turner and Galvin together, and comparing their facts to this case, there are enough similarities to find that Matthew Friedman’s regular use of the RX-7 and /or the VW Bug exclude his coverage under the Hanover policy. It is reasonably inferable from the undisputed facts that Matthew Friedman regularly used the RX-7, or alternatively, that he regularly used a “pool” of vehicles consisting of the RX-7 and the VW Bug. As in Turner, Matthew Friedman was dependent on the RX-7 and the VW Bug to perform his daily routine of work and socializing. Without borrowing these cars from his parents, Friedman would have been without transportation because his own car was in Florida where he attended school. Additionally, Matthew Friedman was using cars from among a pool of automobiles, a use which Galvin instructs triggers the “regular use" exclusion. For these reasons, Hanover is entitled to judgment as a matter of law.
ORDER AND JUDGMENT
The Motion for Summary Judgment of Defendant Hanover Insurance Company is ALLOWED and the Cross-Motion for Summary Judgment of Plaintiff RLI Insurance Company is DENIED. Defendant Hanover Insurance Company is not required to indemnify Matthew Friedman pursuant to the motor vehicle insurance policy it issued to Laura Friedman and Plaintiff RLI Insurance Company is not entitled to recover from Defendant any amount it paid in settlement of the civil suit captioned: Chicoine v. Friedman, C.A. No. 90-02690 (Bristol Sup. Ct.).; nor is Plaintiff entitled to recover from Defendant costs or attorneys fees it incurred in defending Matthew Friedman in that lawsuit.[6]

The lawsuit was captioned: Chicoine v. Friedman, C.A. No. 90-02690 (Bristol Sup. Ct.).

The Friedman household boasted numerous automobiles. The RX-7 and a Mazda MX-6 were owned by Harold Friedman. Laura Friedman owned a Plymouth Reliant and a Datsun 510, both ofwhich were insured by Hanover. Together Harold and Laura Friedman owned a VW Bug.

 RLI submits an affidavit by Harold Friedman stating that Matthew Friedman did not regularly use the RX-7. The Court treats this affidavit as Mr. Friedman’s opinion, and not a legal conclusion which the Court must follow.

 United States Fidelity and Guaranty Company, which issued a policy covering the RX-7, also contributed, to the limits of its policy, to this settlement.

For the purposes of its motion, Hanover concedes, arguendo, that Matthew Friedman is an insured under the policy it issued.

Because the regular use exclusion of the Hanover policy applies, the Court does not reach the issue of whether the Hanover policy is primary to the RLI policy.