MICHAEL L. GALVIN, JR. *vs.* AMICA MUTUAL INSURANCE
COMPANY.

Norfolk. December 4, 1980. — February 26, 1981.

Present: HALE, C.J., CUTTER, & KASS, JJ.

*Insurance*, Motor vehicle insurance, Uninsured motorist provision, Regular use exclusion. *Words*, "Regular use."

A police officer who was injured in a collision with an uninsured motor vehicle while he was on duty in a police cruiser was precluded from recovery under the uninsured motorist coverage of his policy of automobile insurance pursuant to an exclusion for injuries sustained while "occupying an auto . . . regularly used by you . . . which is not an auto shown on the Coverage Selections page" even though the automobile he was using was one of at least twelve pool vehicles assigned at random among various police officers. [458-462]

CIVIL ACTION commenced in the Superior Court Department on November 21, 1978.

The case was heard by *Pierce*, J.

*Sumner B. Gillette* for the plaintiff.

*Arthur L. Johns* for the defendant.

CUTTER, J. On July 1, 1978, Galvin, a Boston police officer, owned a motor vehicle insured by Amica Mutual Insurance Company (Amica). The policy on Galvin's automobile included coverage for bodily injury caused by an uninsured automobile. On that day, Galvin, while on duty in a Boston police cruiser, was in collision with a stolen motor vehicle, an uninsured vehicle for purposes of the particular coverage. Galvin sustained serious personal injuries and filed a claim with Amica under his policy's uninsured motorist coverage. See G. L. c. 175, § 113L, as amended through St. 1973, c. 380.

Amica denied liability based upon an exclusion, set forth below, contained in part 3 of the policy. The particular

cruiser in which Galvin was injured was one of a pool of twelve or more Boston police cruisers from which Galvin could have been assigned any one at random on any given duty shift.

The policy exclusion (see G. L. c. 175, § 2B, inserted by St. 1977, c. 801, § 1; see later amendment, St. 1979, c. 354, § 1) reads: "Part 3. Bodily Injury Caused by An Uninsured Auto. Some autos are uninsured. Some accidents involve unidentified hit and run autos. Under this Part, we will pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured or hit and run autos . . . . We will pay only if the injured person is legally entitled to recover from the owner or operator of the uninsured or hit and run auto . . . . We will pay damages to or for: 1. You, [the insured], or any household member . . . . We will *not* pay to or for: . . . 3. Anyone injured while occupying an auto owned or *regularly used by you* or a household member but which is not an auto shown on the Coverage Selections page" (emphasis supplied in part). The last sentence just quoted is for convenience referred to as the "regular use exclusion."

The question for decision is whether the police cruiser in which Galvin was injured was "an auto . . . regularly used" by him within the meaning of the regular use exclusion. He contends that, because it was one of at least twelve pool vehicles assigned at random among various police officers, it was not a vehicle regularly used by him.

Galvin, upon Amica's denial of his claim, sought declaratory relief in the Superior Court. He now has appealed from a judgment (entered February 19, 1980) declaring that the uninsured motorist coverage of his policy is not applicable to his claim against Amica because of the "regular use" exclusion in the policy and denying him any recovery.

The question of what constitutes "regular use" of a vehicle within the meaning of a motor vehicle liability insurance policy here arises with respect to the regular use exclusion in the uninsured motorist provision. That coverage, however, is relatively new. See 12 Couch, Insurance § 45:619 (2d

ed. 1964, hereafter cited as Couch). The precedents deal with similar exclusions in other types of motor vehicle coverage. Among these is the so called "drive other cars" provision, the purpose of which is to afford coverage for "occasional or incidental use of other . . . [than vehicles owned by the insured] without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurer without a corresponding increase in the premium.[1] The policy is not intended to cover the insured against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to use. More specifically, the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured." 13 Couch § 45:1052 (2d ed. 1965). The purpose of inserting such an exclusion (as that now before us) in any form of motor vehicle coverage is substantially the same. Thus we regard the decisions with respect to the regular use exclusion in "drive other cars" provisions and in other types of motor vehicle coverage as applicable to the similar regular use exclusion under the uninsured motorist provisions.

The precise question does not appear to have been decided in Massachusetts. It seems to have been tacitly assumed in *Reliance Ins. Co.* v. *Robertson*, 7 Mass. App. Ct. 735 (1979), that the uninsured motorist coverage (in the liability policy there discussed insuring the automobile owned by a State police officer) would allow recovery by that officer in circumstances closely similar to those now before us. That case, however, arose under a policy form somewhat different from that now before us. In any event, the point

---

[1] Two Massachusetts cases (not on their facts close to this case) concerning the uninsured motorist provision recognize the principle that such a policy provision will not be construed to include a coverage for which the insured has not chosen to pay an additional premium, appropriate under the applicable policy. See *Forrest* v. *Hartford Acc. & Indem. Co.*, 367 Mass. 106, 107-108 (1975); *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 89 n.6 (1977).

now presented was not there raised or considered.[2] We thus must seek guidance from decisions in other jurisdictions.

Galvin's counsel contends that the language of the regular use exclusion, "an auto . . . regularly used by you," should be taken as referring only to a particular vehicle and not to all the vehicles in a pool of vehicles regularly available to the insured motorist. We do not agree and see no ambiguity in the words used. A heavy majority of the decisions elsewhere interpret such words (in closely similar policy language[3]) as treating all motor vehicles in a pool, any one of which is available to the person insured, as within the regular use exclusion. The authorities are collected in 13 Couch §§ 45:1050 to 45:1065, especially §§ 45:1055 and 45:1059 (1965 & Supp. 1980). See Annot. 86 A.L.R.2d 937, especially § 7(b).

One decision elsewhere upon the regular use exclusion is very close on its facts to the present case. See *Kenney* v. *Employers' Liab. Assur. Corp.*, 5 Ohio St. 2d 131, 132, 134-135 (1966). There, as in this case, a policeman was injured in one of several cruisers available in a pool. The policeman was not allowed to recover under his own policy. The opinion (at 134-135) said, "[O]n the facts of this case, we do not believe that the words 'an automobile . . . furnished for the regular use' of plaintiff are ambiguous or can reasonably be interpreted so as not to describe the cruiser in

---

[2] The *Reliance Ins. Co.* opinion was directed entirely to a question which (although raised by the pleadings) we need not reach, viz. whether the insurance carrier was entitled, under another portion of the uninsured motorist provisions of the policy, to take credit for disability benefits paid by the Commonwealth to the State police officer.

[3] Because of the close similarity in language of the regular use exclusions over most of the nation, decisions in other States in this area are highly useful as precedents. Compare *Royal Indem. Co.* v. *Blakely*, 372 Mass. at 90. We have noted, however, that the supposedly simplified language of Galvin's 1978 policy omits from the new provision the words "furnished for" or "available for" the regular use of the insured motorist found in the regular use exclusions considered in the decisions elsewhere. We conclude, in view of the long background of "regular use" exclusions around the nation, that the revised exclusion was only a simplified version of the essentially standard exclusion and that the omissions have no substantive significance.

which plaintiff was riding at the time of his injury. . . . In order to be excluded under this exclusionary clause, an automobile need not be a single particular automobile regularly furnished to the named insured. Thus it is well settled that an automobile will be excluded under such policy provisions although it is only one of a group of automobiles from which an automobile is regularly furnished to the named insured by his employer." To similar effect (as to a pool of police vehicles) are *Commercial Ins. Co.* v. *Gardner*, 233 F.Supp. 884, 886-888 (E.D.S.C. 1964), and *O'Brien* v. *Halifax Ins. Co.*, 141 So. 2d 307, 308 (Fla. Dist. Ct. App. 1962). Other decisions relating to motor vehicle pools or fleets (closely analogous to those involving police officers) include: *Voelker* v. *Travelers Indem. Co.*, 260 F. 2d 275, 277-278 (7th Cir. 1958); *Farm Bureau Mut. Auto. Ins. Co.* v. *Marr*, 128 F.Supp. 67, 68-71 (D. N.J. 1955); *Bringle* v. *Economy Fire & Cas. Co.*, 169 N.W.2d 879, 881-884 (Iowa 1979); *Winterwerp* v. *Allstate Ins. Co.*, 277 Md. 714, 716-721 (1976); *Moore* v. *State Farm Mut. Auto. Ins. Co.*, 239 Miss. 130, 133-135 (1960); *Davy* v. *Merchants Mut. Cas. Co.*, 97 N.H. 236, 238-239 (1952); *Venters* v. *Selected Risks Ins. Co.*, 120 N.J. Super. 549, 552 (1972); *Ruggiero* v. *Globe Indem. Co.*, 66 Misc. 2d 948, 951 (N.Y. Civ. Ct. 1971); *International Serv. Ins. Co.* v. *Walther*, 463 S.W. 2d 774, 776 (Tex. Civ. App. 1971); *Quesenberry* v. *Nichols*, 208 Va. 667, 669, 672-674 (1968); *Westhaver* v. *Hawaiian Ins. & Guar. Co.*, 15 Wash. App. 406, 407-409 (1976). Compare and contrast *Pacific Auto Ins. Co.* v. *Lewis*, 56 Cal. App.2d 597, 600-601 (1943); *Cotton States Mut. Ins. Co.* v. *Falls*, 114 Ga. App. 812, 814, and see 815-817 (1966); *Miller* v. *Farmers Mut. Auto Ins. Co.*, 179 Kan. 50, 53, 54 (1956); *Glisson* v. *State Farm Mut. Auto Ins. Co.*, 246 S.C. 76, 81, 85 (1965).

The majority decisions outside Massachusetts interpreting the regular use exclusion mostly antedate the drafting in 1977 of the simplified policy (used in 1977 and 1978) now before us. That policy uses, in the regular use exclusion, language closely similar to that provision which has been widely interpreted elsewhere as treating, as within the ex-

clusion, pool or fleet automobiles available to an insured motorist. The majority decisions elsewhere, of course, are not binding upon us (although in general consistent with the available Massachusetts cases, note 1, *supra*). We think it appropriate, however, to give to the exclusion in the new 1977-1978 policy the meaning established by the weight of authority elsewhere. We hold that the regular use exclusion in the uninsured motorist provisions of Galvin's policy prevents him from recovery in this proceeding.

Prior to the entry of judgment in the Superior Court, Galvin's attorney took the deposition of an attorney employed by the Massachusetts Division of Insurance, who had participated with representatives of the insurance industry in drafting the simplified policy. The policy required the approval of the Commissioner of Insurance. See G. L. c. 175, §§ 2B, 113A, 113L, as severally amended. Subject to timely objection, this attorney testified at the deposition to a different interpretation of the regular use exclusion from that which we have adopted. He did not testify to any contemporaneous, long-continued, or published administrative interpretation (by the Insurance Division) of the regular use exclusion. Compare *Lowell Gas Co.* v. *Commissioner of Corps. & Taxn.*, 377 Mass. 255, 262 (1979). We view his deposition as expressing only his personal opinion. It is not clear to what extent, if any, this deposition was brought to the attention of the trial judge. In any event, it was not admissible and is entitled to no weight. At most, it represents the not very clear, post-approval view (about the meaning of the regular use exclusion) of one participant in discussions prior to the Commissioner's approval of the contract provisions. See the somewhat analogous situation discussed in *McKenney* v. *Commission on Judicial Conduct*, 377 Mass. 790, 799 (1979).

*Judgment affirmed.*