STEPHEN J. TURNER & another[1] *vs.* AETNA CASUALTY & SURETY COMPANY. No. 93-P-633. February 22, 1994. *Insurance*, Motor vehicle insurance, Regular use exclusion. *Words*, "Regular use."

Our task is to provide the contextual meaning to a "regular use" coverage exclusion in an automobile liability insurance policy.

In 1987, Kathleen Stillson moved from her family home in Hyannis to her grandmother's residence in Attleboro. A year later, in June, 1988, Stillson moved to the home of her boyfriend, Burney Briggs, in Hyannis. While they lived together, Stillson and Briggs used Briggs' Buick Skylark automobile for transportation to and from work, for errands, and to take

---

[1]Laurie M. Turner.

their son to day care; Stillson estimated that, although she had no key and always first asked permission, she drove the vehicle about three times a week. In November, 1989, Stillson and her son returned to live in the Stillson family home. Nevertheless, Stillson, who had no automobile of her own and did not use her parents' vehicle, continued to ride to her workplace with Briggs and to drive the Skylark alone approximately once a week. On December 14, 1989, Stillson borrowed the Skylark overnight. The next day, while driving to her son's day care, Stillson collided with Stephen J. Turner.

At the time of the accident, Stillson's parents' automobile was insured under an Aetna Casualty & Surety Co. (Aetna) policy covering "damages to people injured" by members of the Stillsons' household. The policy excluded coverage "[f]or injuries resulting from an accident while [the household member was] using an auto [she] own[ed] or use[d] regularly, unless a premium . . . [was] shown for that auto on the Coverage Selections Page."[2] No such premium was paid or contemplated by the Stillsons. Based on that "regular use" exclusion, Aetna declined coverage and defense of Kathleen Stillson in an action brought by Turner.

On February 4, 1992, Turner and his wife filed this action to determine Aetna's obligations under the Stillson policy. On January 13, 1993, based on Stillson's October 21, 1992, deposition, both sides moved for summary judgment. Mass.R.Civ.P. 56, 365 Mass. 824 (1974). On February 26, 1993, judgment was entered declaring that:

> "Pursuant to the undisputed facts of this case, the regular use exclusion is not applicable. At the time of this accident, Kathleen Stillson was living apart from her ex-boyfriend, the father of her child. Kathleen Stillson was a household member of her parents who were insured by the defendant. The regular use exclusion is not applicable in the circumstance of this case. This occasional and incidental use does not fall within the regular use exclusion. The facts herein are distinguishable from [*Galvin* v. *Amica Mut. Ins. Co.*, 11 Mass. App. Ct. 457 (1981)]."

Aetna appeals. We reverse.

When a regular use exclusion is given its plain meaning in the context of the standard Massachusetts automobile policy, it is susceptible of only one interpretation: "liability coverage does not extend to automobiles owned or *furnished for the regular use* of the named insured's family members" (emphasis supplied). *Murphy* v. *Noonan*, 30 Mass. App. Ct. 950, 951 (1991). A regular use exclusion "afford[s] coverage for 'occasional or inci-

---

[2]As the parties press on appeal only the issue of Aetna's liability for optional bodily injury coverage and there is no indication that the question of compulsory coverage was raised in the Superior Court, we address only the issue of Aetna's liability under the optional coverage.

dental use of other . . . [than vehicles owned by the insured] without the payment of an additional premium, but . . . exclude[s] the habitual use of other cars, which would increase the risk on the insurer without a corresponding increase in the premium. The policy is not intended to cover the insured against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to use. More specifically, the . . . limitation . . . is [intended] to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured.' " *Galvin* v. *Amica Mut. Ins. Co.*, 11 Mass. App. Ct. 457, 459 (1981), quoting from 13 Couch, Insurance § 45.1052 (2d ed. 1965).[3] See also *Volpe* v. *Prudential Property & Cas. Ins. Co.*, 802 F.2d 1, 4 (1st Cir. 1986) (in applying New Hampshire law, that court stated that "[r]egular use" requires "sufficiently frequent, systematic or authoritative [use] as to [make] it reasonable for an insurer to expect an extra premium to insure an additional car").

In determining that the "regular use exclusion is not applicable in the circumstances of this case," the Superior Court judge took too narrow a view of the content of the policy term "used regularly." In the instant circumstances, we think that riding as a passenger in a vehicle constitutes "use" within the meaning of that term of the policy. See *id.* at 2. At the time of this accident, the plaintiff's use of Briggs' car was "frequent [and] systematic," as either a passenger or an operator. Cf. *Volpe, supra*.[4] Consistent with the language in *Galvin*, she "frequently use[d] or ha[d] the opportunity to use" Briggs' vehicle. Kathleen often used Briggs' automobile while she lived with Briggs, and, after she returned to her family home (where she continues to reside), she continued to use it, i.e., continued to ride to work with Briggs and to operate Briggs' vehicle alone approximately "once a week." Kathleen did not use her parents' automobile, and unlike in *Volpe*, she had no vehicle of her own. From Kathleen's own testimony regarding the day of the accident — "[t]hat day he had the day off, so I used the car that day. But it was the same as — he would come pick me up in the morning and drop us off. Or if if I needed it —," it is reasonably inferable that Kathleen relied on the Briggs vehicle exclusively to perform her required daily routine, which meant, in effect, that on days that Briggs did not drive she had no recourse other than to operate that auto-

[3]Although *Galvin* involved a regular use uninsured motorist exclusion, this court noted at 459: "The purpose of inserting such an exclusion (as that now before us) in any form of motor vehicle coverage is substantially the same. Thus we regard the decisions with respect to the regular use exclusion in 'drive other cars' provisions and in other types of motor vehicle coverage as applicable to the similar regular use exclusion under the uninsured motorist provisions."

[4]"Because of the close similarity in language of the regular use exclusions over most of the nation, decisions in other States in this area are highly useful as precedents." *Galvin* v. *Amica Mut. Ins. Co.*, 11 Mass. App. Ct. 457, 460 n.3 (1981).

mobile (and only that one). Given such "habitual" and periodic use,[5] Aetna could reasonably have expected "an extra premium to insure" Stillson's use of Briggs' vehicle. Contrast *Volpe, supra.*

The judgment is vacated, and a new judgment is to enter declaring that in these circumstances the regular use exclusion is applicable and Aetna properly may decline coverage of the damage to the injured plaintiffs and refuse to defend Kathleen Stillson as the alleged tortfeasor.

*So ordered.*

*Stephen M.A. Woodworth (Douglas A. Ewing* with him) for the defendant.
*Charles E. Arris, Jr.,* for the plaintiffs.

---

[5]We are mindful that, because Kathleen Stillson held no keys to the Buick Skylark and always asked permission before using it, an inference may fairly be drawn that her use of the Skylark was never unrestricted.

