1. The facts. In ruling on the cross motions for summary judgment, the Superior Court judge had before him various materials, including Hanover’s *830 policy and affidavits from Matthew and his father. The “regular use” coverage exclusion clause of the policy provides that Hanover will not pay “[f]or injuries resulting from an accident while you or a household member is using an auto which you or any household member owns or uses regularly, unless a premium for this Part is shown for that auto on the Coverage Selections Page” (emphasis in original). The only automobiles listed on the coverage selections page of the policy for which a premium was paid to Hanover are the mother’s Datsun 510 and her Plymouth Reliant.
In his affidavit, Matthew stated that, prior to his graduation from high school in 1985, he owned and primarily used a 1978 Honda Civic automobile. During that time, he also drove his father’s car, the RX-7, but only “periodically.” From June, 1985, until March, 1986, Matthew attended school in Georgia and visited his parents during school vacations. He related that on these visits to his parents’ home he “primarily” used the Honda Civic but “used the subject RX-7 when I needed to.” He stated that the RX-7 was “available” for his “use during that time.”
When Matthew began to attend school in Florida in September, 1986, he sold his Honda Civic. However, according to Matthew, his father’s RX-7 and his mother’s Datsun 510 “were always available” to him for his “use” during his winter break from school that year. His parents also owned a Volkswagen “bug” that was available to him. At some point, Matthew’s father purchased a Mazda MX-6 and no longer used the RX-7 with any degree of frequency. Consequently, when Matthew was home for his summer break from school, June through September of 1987, he and his sister, who was also home from college, had their mother’s vehicle as well as the RX-7 available for their use.
Matthew returned to school in Florida in September, 1987, with his mother’s Datsun. When he returned to his parents’ home in December for a three-week stay, he left the Datsun in Florida. During that time, he used the Volkswagen “to commute to work in the daytime” and the RX-7 at night because the Volkswagen had no heat. As put by Matthew in his affidavit: “The Mazda RX-7 and the Volkswagen made up a pool of vehicles, one of which was always available for my use during the times I visited my family on school break. I used one of these vehicles each and every day during the three week break when this accident occurred.”
There are two affidavits from Matthew’s father. In his first affidavit, the father stated that he was the “primary driver of the Mazda RX-7” and that neither his wife nor Matthew “owned or regularly used the vehicle involved in the accident.” The Superior Court judge correctly treated the father’s statement in his first affidavit concerning the degree of Matthew’s use of the RX-7 as an “opinion, and not a legal conclusion” binding upon the court. The father’s later affidavit tracks and corroborates Matthew’s in all respects, and we need not relate its contents.
2. The law. The law to be applied to the undisputed facts of this case is set out in Turner v. Aetna Cas. & Sur. Co., 36 Mass. App. Ct. 921, 922-923 (1994). “A regular use exclusion ‘afford[s] coverage for “occasional or incidental use of other . . . [than vehicles owned by the insured] without the payment of an additional premium, but . . . exclude[s] the habitual use of other cars, which would increase the risk on the insurer without a corre- *831 spending increase in the premium. The policy is not intended to cover the insured against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to use. More specifically, the . . . limitation ... is [intended] to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured.’ ” Galvin v. Amica Mut. Ins. Co., 11 Mass. App. Ct. 457, 459 (1981), quoting from 13 Couch, Insurance § 45.1052 (2d ed. 1965). See also Volpe v. Prudential Property & Cas. Ins. Co., 802 F.2d 1, 4 (1st Cir. 1986) (in applying New Hampshire law, that court stated that ‘[rjegular use’ requires ‘sufficiently frequent, systematic or authoritative [use] as to [make] it reasonable for an insurer to expect an extra premium to insure an additional car’)” (emphasis added).
William H. Clancy for the plaintiff.
Stephen M.A. Woodworth (Peter E. Heppner with him) for the defendant.
Applying the principles discussed in Turner to the undisputed facts of the case, we conclude that Matthew’s use of the RX-7 fell within the “regular use” coverage exclusion clause of the policy. RLI’s argument, that there is nothing in the record to show that Matthew actually used the RX-7 on any occasion except the night of the accident, is beside the point. The affidavits show that for several years Matthew stayed at his parents’ home during his summer and midyear school vacations, that during these periods Matthew had his parents’ blanket permission to use the RX-7 whenever he wanted, and that the RX-7 was one of three vehicles always available to him during his December, 1987, vacation. We think that, on the basis of the history of the availability of the RX-7 to Matthew, as well as his habitual and periodic use of that car, Hanover could reasonably have expected to be paid an extra premium for the insurance of the RX-7. See Turner, supra.

Judgment affirmed.