SAFETY INSURANCE COMPANY *vs.* ANN B. DAY & another[1];
THE ANDOVER COMPANIES & others,[2] third-party defendants.

No. 04-P-450.

Suffolk. March 16, 2005. - October 28, 2005.

Present: GREENBERG, COWIN, & GREEN, JJ.

*Motor Vehicle,* Insurance. *Insurance,* Motor vehicle insurance, Regular use exclusion, Insurer's obligation to defend. *Indemnity. Estoppel. Practice, Civil,* Attorney's fees, Costs.

This court concluded that application of the "regular use" exclusion in a policy of motor vehicle insurance (i.e., a denial of coverage in the event of an accident while the insured operator is using an automobile that he or she owns or uses regularly unless a premium has been paid for that vehicle), requires a consistent pattern of use or availability of the vehicle, thereby suggesting that the user relies on the likelihood that he or she will be permitted to use that vehicle at the times in question, and a minimum level of frequency of use as well; thus, in a declaratory judgment action, the defendant's consistent pattern in making periodic use of another's vehicle qualified as regular use under the insurance policy's exclusion [20-23]; however, where the plaintiff insurance company delayed in asserting the absence of coverage and mishandled the defense of the defendant's case, the resulting prejudice to the defendant estopped the insurer from declining to indemnify the defendant [23-25], and the insurer was consequently liable for the defendant's attorney's fees and costs [25-26].

CIVIL ACTION commenced in the Superior Court Department on June 10, 1999.

The case was heard by *Ernest B. Murphy,* J., on motions for summary judgment; a motion for attorney's fees and costs was heard by *Christopher J. Muse,* J., and entry of separate and final judgment was ordered by him.

*Stephen M.A. Woodworth* for the plaintiff.

*Samuel M. Furgang* for Merrimack Mutual Fire Insurance Company.

*James C. Donnelly, Jr.,* for Ann B. Day.

[1]Noreen Mahan.

[2]Cambridge Mutual Fire Insurance Company and Merrimack Mutual Fire Insurance Company.

COWIN, J. The defendant Ann B. Day, while driving a motor vehicle owned by her housemate, Donna E. Enberg, collided with a motor vehicle operated by the defendant Noreen Mahan, resulting in personal injuries to Mahan. The insurer of Day's own vehicle, the plaintiff, Safety Insurance Company (Safety), provided Day with a defense in a personal injury action brought against her by Mahan but, after an extended period, declined to indemnify Day on the ground that her use of Enberg's vehicle brought her within the so-called "regular use" exclusion of Safety's policy.

Safety commenced a declaratory judgment action to determine the question of coverage, and a judge of the Superior Court, deciding that Day had not made regular use of her housemate's vehicle, entered summary judgment in Day's favor. Another judge of the Superior Court granted Day's application for an award of attorney's fees and costs, and Safety appealed from a separate and final judgment entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974).[3] We conclude that Day's use of Enberg's vehicle constituted regular use excluded from coverage. However, we hold in addition that, on the undisputed facts in the summary judgment record, Safety's unreasonable delay in asserting the exclusion defense, accompanied by prejudice both to Day and her umbrella insurance carrier, estopped Safety from a denial of indemnification. Accordingly, we affirm the judgments, including the portion awarding attorney's fees and costs.

1. *Material facts and relevant prior proceedings.* The underlying material facts appear to be undisputed. On September 16, 1996, Day and Enberg shared a house. Each owned an insured motor vehicle, Day owning a 1989 Ford Taurus (insured by Safety with an optional bodily injury limit of $250,000 per person) and Enberg owning a 1994 Ford Taurus (insured by Trust Insurance Company with an optional bodily injury limit of $100,000 per person). Each was listed as an occasional opera-

---

[3]A separate and final judgment in favor of the third-party defendants on a count of their counterclaim entered at a later time. Safety also filed a notice of appeal from that judgment. On appeal, the third-party defendants argue the same issues as Day.

tor on the other's insurance policy. Day had additional coverage under a homeowners policy with a personal umbrella liability endorsement issued by Merrimack Mutual Fire Insurance Company (Merrimack).

While there are minor variations in the parties' characterizations of practices involving Day's use of Enberg's vehicle, they agree on the following. Day primarily used her own vehicle. With Enberg's permission, she used Enberg's vehicle two or three times per month for trips out of town. About twice per month, Enberg would drive her own vehicle, with Day as a passenger, to Day's out-of-town meetings. Day would also occasionally use Enberg's vehicle for local purposes. Day did not have a set of keys to Enberg's vehicle; however, the keys were often left in a basket by the door and were accessible to Day at the times of her use. Day always informed Enberg when she wanted to use Enberg's vehicle.[4]

On the date in question, Day, operating Enberg's vehicle with Enberg's permission, was involved in a motor vehicle accident with Mahan's vehicle, allegedly resulting in personal injuries to Mahan. On that date, Safety insured Day by means of a standard Massachusetts automobile insurance policy, sixth edition, that provided, in part 5, that Safety would "pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident," but would not pay "for injuries resulting from an accident while you or a household member[5] is using an auto which you or any household member owns or uses regularly, unless a premium for this Part [5] is shown for that auto on the Coverage Selections Page." Day had not listed Enberg's automobile on the coverage selections page of her policy with Safety and correspondingly did not pay any premium to cover Enberg's vehicle under her policy with Safety. On July 17, 1997, Mahan commenced a personal injury action against Day and Enberg. Trust Insurance Company, Enberg's

---

[4]While not entirely clear from the record, it appears that Enberg never refused permission unless she had a conflicting need to use the vehicle herself.

[5]Safety concedes that the exclusion for regular use by a "household member" is inapplicable because Day and Enberg were not related, and thus were not household members under the terms of the policy.

insurer, defended Enberg and, with Safety's consent, defended Day as well.[6]

On March 20, 1998, Trust Insurance Company reported to Safety that the vehicle that Day operated at the time of the accident had been borrowed from Enberg. Safety made no effort at that time, nor for some time thereafter, to investigate or determine whether, as a result, the regular use exclusion might affect Day's coverage. On September 16, 1998, Trust Insurance Company settled on Enberg's behalf by paying Mahan the full amount of its policy ($100,000). Trust Insurance Company obtained a release from Mahan of further claims against Enberg, but did not obtain such a release in favor of Day. Safety did not participate in the settlement or attempt to do so.

On September 28, 1998, Safety notified Day that it would assume her defense in the personal injury action by Mahan. Safety also reported to Mahan's attorney that Day was insured by a $250,000/$500,000 automobile liability policy that covered the accident. Safety made no reservation of rights with respect to its coverage, nor had it done so previously. From that point forward, Safety provided Day a full defense until the case eventually settled. During the ensuing months, Safety was informed at various times by counsel it had selected to represent Day that Mahan's injuries were serious; that she was a convincing witness; that her employment capacity and life-style appeared to have been adversely affected by the accident; that Day, while a credible witness, had no testimony that helped in the defense; and that Safety had considerable exposure to a damages judgment.[7]

On December 21, 1998, Day's counsel reported to Safety that Mahan's attorney valued the case at Safety's policy limit of $250,000, but was willing to mediate. On April 9, 1999, counsel reported to Safety that Mahan's counsel had made a demand for

---

[6]Trust Insurance Company kept Safety informed with respect to the case. (Under the relevant part of Safety's policy, the "owner's auto insurance must pay its limits before [Safety] pay[s].")

[7]The statement of events during this period is based on Day's summary judgment submissions. Safety has offered no evidentiary basis on which to dispute Day's factual assertions. See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974); Rule 9A(b)(5) of the Rules of the Superior Court (2004).

$250,000.[8] None of the information regarding the value of Mahan's case, Mahan's demand of $250,000, or Mahan's willingness to mediate was communicated by Safety to Day. In early 1999, Safety began to investigate whether the regular use exclusion might apply. The investigation included an interview with Day that was conducted without her counsel being present.

On June 9, 1999, Safety informed Day by letter that it would seek a judgment declaring that it was not obligated to provide coverage by virtue of the regular use exclusion. Safety filed its complaint on the following day. As noted above, Safety continued to defend Day in the tort action. As the declaratory judgment case proceeded, discovery disputes developed in due course. It is unnecessary to detail them, other than to note that Safety, for reasons that are unclear, sent to Mahan's attorney a copy of a confidential status report earlier prepared by Safety's attorney for Safety that disclosed the information that Safety's counsel viewed Mahan's case as valid and difficult to defend with a potential for significant damages.[9] Inspired by these disclosures, Mahan pressed for more money in the underlying personal injury action.

The parties in the declaratory judgment proceeding filed cross motions for summary judgment. The motion judge, acknowledging that "the issue is close," determined that Day's use of Enberg's vehicle was not regular use under the policy, allowed the summary judgment motions of Day and Mahan, and denied the summary judgment motion of Safety. Having concluded that there was coverage under the terms of the policy, the judge did not address Day's alternative contention that Safety's failure to address, or inform Day of, the coverage

[8]The $250,000 demanded was over and above the $100,000 Mahan had already received from Trust Insurance Company in return for a release of Enberg.

[9]Mahan's attorney would not otherwise have been privy to this information. Safety subsequently took the position that Day had improperly released the material, and moved to amend its declaratory judgment complaint to assert a failure to cooperate on her part. A judge of the Superior Court (not the judge who acted either on the summary judgment motion or the fee application) denied leave to amend, labeling Safety's request "preposterous" and "frivolous, if not nonsensical," and finding that "Safety's lawyers are the ones who disclosed the confidential documents to defendant Mahan's counsel."

question for twenty-three months after commencement of Mahan's personal injury action estopped it from asserting a coverage defense, "other than to note the inherent conflict where an insurer-selected defense counsel represents the insured." Another judge, over Safety's opposition, determined that Day was entitled to attorney's fees and costs for prevailing in the declaratory judgment case, and entered an award of $101,649.10 (with an additional $4,000 in reimbursement of expert witness fees). Safety filed a timely notice of appeal.

Mahan's personal injury claim against Day ultimately settled for $700,000. Safety contributed $250,000 of that amount; Merrimack paid $450,000; and the insurers agreed that, should Safety prevail in this appeal, Merrimack would reimburse Safety its $250,000 payment (given that, in the absence of liability on Safety's part, Merrimack's umbrella coverage would "drop down" to cover Day's entire exposure).[10] Accordingly, the basic dispute is actually one between insurance carriers, with Day having exposure only with respect to attorney's fees and costs incurred by her in the declaratory judgment case.

2. *The "regular use" exclusion.* The regular use exclusion is expressed in the "optional bodily injury to others" portion of the standard automobile liability policy as a denial of coverage in the event of an accident while the insured operator "is using an auto which you or any household member owns or uses regularly" unless a premium has been paid for that vehicle. That exclusion continues to present difficulties in its application to different factual situations. It may be that the concept cannot be defined more precisely, and so we look to the insurer's underlying objective. That objective has been stated as the provision of coverage for "occasional or incidental use of other . . . [than vehicles owned by the insured] without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurer without a corresponding increase in the premium." *Galvin* v. *Amica Mut. Ins. Co.,* 11 Mass. App. Ct. 457, 459 (1981), quoting from 13 Couch § 45:1052 (2d ed. 1965). "The policy is not intended

---

[10]The details regarding settlement of the tort action and the insurers' agreement have been provided to us by stipulation. The parties agree that these facts may be considered in connection with the appeal.

to cover the insured against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to use." *Ibid.*, quoting from 13 Couch § 45:1052. Couch further defines the intention as the prevention of "a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured." *Galvin, supra* at 459, quoting from 13 Couch § 45:1052.

We reiterated these observations in *Turner* v. *Aetna Cas. & Sur. Co.*, 36 Mass. App. Ct. 921, 922-923 (1994), and *RLI Ins. Co.* v. *Hanover Ins. Co.*, 42 Mass. App. Ct. 913, 914-915 (1997). In *Turner*, we also observed that regular use was not defined solely by operation of the vehicle in question, but included riding as a passenger, at least where this was coupled with periodic operation. *Turner, supra* at 923. In *RLI Ins. Co.*, we emphasized that the exclusion applied both to actual regular use and to the opportunity to use the vehicle on a regular basis. *RLI Ins. Co., supra* at 915. Between the decisions in *Galvin* and *Turner*, the United States Court of Appeals for the First Circuit, interpreting similar language in a New Hampshire automobile insurance policy, characterized that State's law as equating regular use with "sufficiently frequent, systematic or authoritative [use] as to have made it reasonable for an insurer to expect an extra premium to insure an additional car." *Volpe* v. *Prudential Property & Cas. Ins. Co.*, 802 F.2d 1, 4 (1st Cir. 1986), citing *Spaulding* v. *Concord Gen. Mut. Ins. Co.*, 122 N.H. 515 (1982).

We continue to follow the definition in Couch that distinguishes between "incidental" use and "habitual" use of another vehicle, together with the recognition that "use" encompasses both use as a passenger and general availability. It is, of course, the middle ground between the poles of "incidental" and "habitual" where, as in this case, application becomes difficult. We believe that, in such circumstances, an appropriate inquiry is whether there is a consistent pattern of use or availability of the other vehicle, thereby suggesting that the user relies on the likelihood that he will be permitted to use that vehicle at the times in question. Obviously, a minimum level of frequency is a

prerequisite as well. Use once a year might be consistent, but it would presumably not constitute regular use. Thus, it is the consistency of use, coupled with at least some frequency of use, that combine to determine whether regular use has occurred.

This approach is in keeping with past cases. See *Galvin* v. *Amica Mut. Ins. Co.*, *supra* at 460 (access to vehicles in motor pool held to be regular use); *Turner* v. *Aetna Cas. & Sur. Co.*, *supra* at 923 (periodic use of boyfriend's car was regular use); *RLI Ins. Co.* v. *Hanover Ins. Co.*, *supra* at 915 (blanket permission to use parents' car during school vacations held to be regular use). Certain factors relied on by the Court of Appeals, see *Volpe* v. *Prudential Property & Cas. Ins. Co.*, *supra*, such as that the operator did not use the borrowed vehicle to commute to work, did not have exclusive use of the vehicle for any significant period, and did not have unrestricted use of it, certainly may be considered in deciding whether there is a pattern of regular use; however, we do not consider such factors as determinative by themselves.

We recognize that application of the regular use exclusion often arises where the motor vehicle operator has no insured vehicle of her own, usually making use of one or more automobiles insured by other household members. See, for example, *Turner*, *supra*, and *RLI Ins. Co.*, *supra*. The practice presumably invited the statement in Couch, *supra*, that the regular use exclusion is intended to prevent the members of households with multiple vehicles from insuring one vehicle and then using it interchangeably with the others. We do not, however, view the fact that a driver has no insured vehicle of her own as a determinative factor. The key is not whether a driver owns an insured vehicle, but rather whether an insurer (the driver's own or that of a household member) has agreed to indemnify the driver with respect to claims arising out of a particular activity (i.e., driving an automobile belonging to someone else).

We conclude that the consistent practice of Day in making periodic use of Enberg's vehicle qualified as regular use under the policy exclusion. Day made consistent and sufficiently frequent use of the Enberg vehicle, including two or three trips out of town on a monthly basis, use as a passenger about twice

monthly, and periodic local use. It also appears that Day anticipated Enberg's permission, except when Enberg needed the vehicle herself, and that Day relied on her ability to make such use of the vehicle even though she had her own insured vehicle. That Enberg was paying insurance premiums to another carrier (Trust Insurance Company) does not strike us as relevant in determining whether Day was making the kind of use of the Enberg vehicle that the insurer of Day's own vehicle, Safety, had excluded from coverage. Consequently, we agree with Safety that the regular use exclusion applies to the facts of this case.

3. *Estoppel.* Ordinarily, a determination that Safety is not liable under the policy would be the end of it. However, Day and Merrimack argue that Safety's delay in asserting the absence of coverage, together with its mishandling of the defense, prejudiced them and estopped Safety from declining to indemnify. While this contention was asserted in the summary judgment proceedings, the judge, having ruled that there was coverage, did not address the issue. We are free to affirm the motion judge on a ground other than what he chose. See *Germagian* v. *Berrini*, 60 Mass. App. Ct. 456, 459 (2004). Safety acknowledges that, in the interest of efficiency, it is appropriate that we consider the estoppel issue.[11]

The familiar criteria for an estoppel are, specifically, that a party says or does something intended to induce conduct on the part of another; that the other person reasonably relies on the representation, and therefore acts or refrains from acting; and that the other person incurs a detriment as a result. See *Turnpike Motors, Inc.* v. *Newbury Group, Inc.*, 413 Mass. 119, 123 (1992). The factors work somewhat differently in the insurance context, for, in a case such as this, the insurance contract gives the insurer the right to control the defense, at least to the extent of the risk it has assumed under the policy. Indeed, that defense, with concomitant control of the litigation by the insurer, is one of the benefits purchased by the insured. Thus, reliance on the part of the insured in these circumstances is not a matter of

---

[11]Day argues that the doctrines of waiver and laches apply as well, but we think it sufficient to analyze this portion of the dispute under principles of estoppel.

conscious choice, but is compelled by the parties' agreement. Therefore, the insurer may not have both control of the defense and an unlimited right to disclaim liability. See *Salonen* v. *Paanenen*, 320 Mass. 568, 574 (1947). Should the insurer give timely notice that it may dispute coverage, the insured then has a right to take part in the defense to ensure that her interests are not compromised. See *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 276 (1970).

We recognize that estoppel generally turns on determinations of fact. Here, however, the relevant facts are established, and the case reduces to a legal question whether those facts create an estoppel. We know that Safety effectively controlled the defense from Mahan's commencement of her personal injury action against Day and Enberg on July 17, 1997, to June 9, 1999, when it informed Day that it would seek declaratory relief on the question of coverage. Safety knew by March 20, 1998, that Day had not been operating her own vehicle, and presumably would have known that considerably earlier had it bothered to ask. It did not begin to investigate whether the regular use exclusion applied until early 1999, and then apparently only as a response to mounting indications that the tort action was likely to cost it the face amount of the policy.

Meanwhile, unbeknownst to Day, and notwithstanding considerable evidence that Mahan's claim would be difficult to defend, Safety ignored opportunities to settle the case with Mahan for the $250,000 face amount of the policy (or even less, given the expressed willingness of Mahan's counsel to enter mediation). Continuing the defense after finally disclosing to Day that it would contest coverage and would commence a declaratory judgment action, Safety then mishandled communications so that the opportunity to satisfy Mahan for $250,000 was irretrievably lost. After almost two years of assuming, reasonably, that she was covered, and then being informed for the first time that she might not be, Day could hardly be expected to assume the burden of the defense at that stage. Safety placed her in a position in which she had no choice but to rely on its defense of the case, and she incurred damage as a result.

Safety's apparently sole answer to the estoppel contention is

that Day suffered no loss as a result of its actions by virtue of the fact that she had umbrella coverage. The observation that she incurred no damages is not entirely accurate. Day was compelled to defend at her own expense (but see part 4, *infra*) a declaratory judgment action in which she would ultimately prevail. In addition, Safety's handling of the matter resulted in the payment to Mahan by Merrimack of $450,000 over and above what the Mahan case could have settled for if properly managed. Merrimack has rights here as well, see *Hartford Cas. Ins. Co.* v. *New Hampshire Ins. Co.*, 417 Mass. 115, 118-121 (1994), and we see no reason why the facts that give rise to an estoppel in favor of Day on the question of coverage should not benefit Merrimack as well.

4. *Attorney's fees and expenses.* Safety objects to any award of attorney's fees and costs, essentially on the basis that, although it lost on the question of coverage, it provided a defense for Day throughout and fees should not be awarded in such circumstances. It argues in the alternative that the fees awarded were excessive and contained an improper interest component.

That an insured who prevails in coverage litigation is entitled to reasonable attorney's fees and expenses is established. See *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93, 98 (1997); *Rubenstein* v. *Royal Ins. Co. of America*, 429 Mass. 355, 359 (1999). Safety's argument that these cases apply only to the obligation to defend, and that they have no bearing on the obligation to indemnify, has been laid to rest by *Hanover Ins. Co.* v. *Golden*, 51 Mass. App. Ct. 465, 468 (2001), *S.C.*, 436 Mass. 584 (2002) ("It should not matter whether . . . the insurer announces withdrawal from the third-party action and sues for a declaration, or [as in the present case] brings a declaratory action and provisionally maintains defense of the third-party action pending instruction by the declaration"). We believe that the logic is obvious. The prevailing insured is entitled under her contract both to a defense and to indemnification; if she must incur legal fees and related expenses to obtain either, the value of her contract is diminished. See *Rubenstein*, *supra* at 357.

For similar reasons, we believe that the insured is no less

entitled to recoup the reasonable expenses associated with the insurer's declaratory judgment action because she prevails on the ground of estoppel rather than on the contractual language governing coverage. What matters is that the insured prevailed, thereby successfully resisting the insurer's attempt to obtain relief with respect to performance of the contract. Day's objective was to obtain that performance. In litigating the declaratory judgment case, Day has reasonably proceeded by asserting alternatively that the regular use exclusion is inapplicable either because the evidence does not support the insurer's claim of regular use or because the insurer is estopped from relying on the regular use exclusion. That she prevails on only one of the two grounds does not mean that she must bear costs imposed on her by the insurer's choice to dispute its liability.

The amount of reimbursement of attorney's fees and expenses is "largely discretionary." *Linthicum* v. *Archambault*, 379 Mass. 381, 388 (1979). The judge reviewed Safety's opposition to the fee application thoughtfully; articulated his reasons for accepting or rejecting the objections; and made adjustments. The insurer has not come close to demonstrating an abuse of discretion. Compare *Siegel* v. *Berkshire Life Ins. Co.*, 64 Mass. App. Ct. 698, 705 (2005). Its further contention that the award includes an improper addition of prejudgment interest on the fee component is misplaced. The award includes interest only from the date of the judge's decision to the date of entry of judgment, and is consistent with G. L. c. 235, § 8.[12]

*Judgments affirmed.*

---

[12]Day has requested an award of appellate attorney's fees and costs. See *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1980); *Fabre* v. *Walton*, 441 Mass. 9, 10 (2004). Day may file an application for attorney's fees and costs, with appropriate support, within fifteen days of the rescript of this opinion. An opposition, if any, shall be filed within fifteen days of the application.