2006 UT App 301

**Jakobe VALENTINE and Nicole Valentine, Plaintiffs and Appellants,**

v.

**FARMERS INSURANCE EXCHANGE, Defendant and Appellee.**

**No. 20050160–CA.**

Court of Appeals of Utah.

July 20, 2006.

John F. Fay and James L. Mouritsen, Lehi, for Appellants.

Barbara L. Maw, Salt Lake City, for Appellee.

Before Judges BENCH, McHUGH, and ORME.

## OPINION

ORME, Judge:

¶ 1 This case arises out of a work-related automobile accident and the insureds' claim under their personal automobile insurance policy for underinsured motorist (UIM) benefits. The trial court ruled that an exclusion in the policy precluded their claim. We affirm, albeit on slightly different grounds.

## BACKGROUND

¶ 2 On December 6, 2000, Nicole Valentine was injured in an accident. The pick-up truck Nicole was driving as an auto parts delivery runner was rear-ended by a vehicle that had itself been struck from behind by another vehicle. Frank Edwards Company (Parts Plus) owned the truck Nicole was driving and provided it to her, as one of six delivery runners Parts Plus employed, for use during regular business hours to make deliveries. There is no dispute that Nicole was making deliveries for her employer at the time of the accident.

¶3 As a matter of routine, Nicole would drive her own car to work and then use the same Parts Plus truck that she was driving at the time of the accident—or one of the other four vehicles Parts Plus provided—to make deliveries. Nicole used the truck strictly for work purposes. ·She did not have any personal copies of the keys to any of the Parts Plus vehicles and did not use any of those vehicles to drive to lunch or to go on any other type of personal errand. At the end of her shift, Nicole would always return the Parts Plus vehicle to the company lot and then use her own car to drive home.

¶4 Following the accident, Nicole settled her claim against the driver who started the chain-reaction accident for $25,000—the policy limit of his insurance coverage—and she also received Workers' Compensation benefits because she sustained her injuries in the course of her employment. Because the damages Nicole suffered as a result of the accident exceeded these two sources of compensation, she made an additional claim for coverage under her personal automobile insurance policy pursuant to its UIM provision.

¶5 Defendant Farmers Insurance Exchange, the issuer of the policy, denied Nicole UIM benefits based on an exclusion in the policy. Nicole and her husband Jakobe then brought suit against Farmers in an effort to secure UIM benefits under the policy. Farmers answered the Valentines' complaint and cross-claimed for declaratory relief, requesting that the trial court determine that the policy exclusion barred the Valentines' claim. Farmers then moved for summary judgment, and the trial court granted the motion. The Valentines now appeal.

## ISSUE AND STANDARD OF REVIEW

¶6 This appeal requires us to review whether the trial court correctly determined on summary judgment that the Valentines' automobile insurance policy precludes UIM benefits for injuries Nicole sustained while driving the Parts Plus truck.[1] Specifically, we must decide whether the trial court correctly concluded, as a matter of law on the undisputed facts, that Nicole's use of the Parts Plus truck constituted "regular use." "Because summary judgment presents only questions of law, we give no deference to the district court's legal decisions and review them for correctness." *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶10, 100 P.3d 1200.

## ANALYSIS

■ ¶7 While the parties' arguments center primarily on the meaning of an exclusion in the Valentines' policy,[2] the matter before us can properly be resolved under the policy's basic UIM provision and its definitions. Concerning UIM coverage, the Valentines' automobile insurance policy states:

> Subject to the Limits of Liability we will pay all sums which an insured person is legally entitled to recover as damages from use of any vehicle other than your insured car ..., which is owned by or furnished or available for the regular use by you or a family member.

(Emphasis omitted.) The Valentines assert that the trial court erred by not finding the exclusion's meaning to be ambiguous, contending that the syntax and phrasing of the exclusion, and its use of certain prepositions and articles, make its language so "confusing," "odd," and "bizarre" as to "cross[] the line into legal ambiguity." While we agree that the exclusion could certainly be drafted so as to more clearly convey its meaning, we need not delve any deeper into whether the exclusion itself is ambiguous. Given the policy's otherwise clear language concerning UIM coverage, the exclusion seems to have been unnecessarily included in the policy as it only reiterates what the policy already states about UIM coverage.

---

1. According to the trial court, an exclusion in the Valentines' policy provided that if the Parts Plus truck was available or furnished for Nicole's regular use, she would be excluded from recovering UIM benefits under the policy. Relying on a dictionary definition of the word "regular," the trial court concluded that the only "reasonable and tenable interpretation" of the phrase "regular use" is use that is " 'recurring uniformly' or 'calculably in time or manner, habitual, constant, orderly,' " in contrast "to use that is occasional, casual or infrequent." Based on that interpretation, and given the undisputed facts of the case, the trial court concluded that Nicole's use of the Parts Plus truck qualified as regular use and that the exclusion precluded the Valentines from seeking UIM benefits under the policy.

2. The exclusion the parties have focused on states:
   > [UIM] Coverage does not apply to damages arising out of the ownership, maintenance, or

the owner or operator of an underinsured motor vehicle because of bodily injury sustained by the insured person while occupying your insured car.

    If other than your insured car, [UIM] coverage applies only if the motor vehicle is a newly acquired or replacement vehicle covered under the terms of this policy. (Emphasis omitted.) Consequently, the policy is clear that UIM coverage only extends to an insured when the insured has been injured while in his or her insured car. Pivotal to the case at hand, then, is the determination whether the Parts Plus truck Nicole was driving at the time of the accident qualifies under the Valentines' policy as an insured car.

¶ 8 The policy defines the meaning of "your insured car" and clearly specifies that an insured car includes "[a]ny other private passenger car, utility car or utility trailer not owned by or furnished or available for regular use by you or a family member." (Emphasis omitted.) By definition, then, an insured car cannot include a non-owned vehicle that is "furnished or available for *regular use* by [the insured]." (Emphasis added.) Thus, the crux of this appeal is whether Nicole's use of the Parts Plus truck constituted regular use so as to eliminate it, by definition, from UIM coverage.

■ ¶ 9 The Valentines' most compelling argument is that the phrase "regular use" is ambiguous.[3]  In assessing the Valentines' assertion, we are mindful that insurance policy language "should be construed pursuant to the same rules as are applied to other ordinary contracts." *Bergera v. Ideal Nat'l Life Ins. Co.*, 524 P.2d 599, 600 (Utah 1974). *See also Village Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 582 (Utah Ct.App.1990). Under our rules of contract interpretation, "[a]n ambiguity exists if the contract provision is susceptible to more than one reasonable interpretation." *Wagner v. Clifton*, 2002 UT 109, ¶ 12, 62 P.3d 440. In

other words, when the insurance policy language is viewed "fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy," it can only be said to contain an ambiguity if its meaning "is not plain to a person of ordinary intelligence and understanding." *Nielsen v. O'Reilly*, 848 P.2d 664, 666 (Utah 1992) (internal quotations and citation omitted).  And insurance policy language "is not necessarily ambiguous simply because one party seeks to endow it with a different meaning from that relied on by the drafter." *Camp v. Deseret Mut. Benefit Ass'n*, 589 P.2d 780, 782 (Utah 1979). *See also Village Inn Apartments*, 790 P.2d at 583 ("A policy-term is not ambiguous ... merely because one party assigns a different meaning to it in accordance with his or her own interests.").

    ■ ¶ 10 To advance their contention that the phrase "regular use" is susceptible of more than one interpretation, the Valentines urge us to consider that the phrase "regular use" can plausibly be interpreted to mean a type of use that is unfettered or without limitation. They argue that the word "regular," as used in the policy, denotes a use that is by its nature the kind one would ordinarily or customarily make of her own vehicle. In other words, the Valentines argue that the Parts Plus truck must have been furnished or made available to Nicole for her use without any limitation—for use at any time, for any and all purposes—to be regular use. According to the Valentines, because Nicole only used the Parts Plus truck for the strictly limited employment purpose for which it was furnished or made available—i.e., delivering auto parts and not for any type of personal errands—the truck was not furnished for her regular use. Despite the fact that Nicole may have used the truck in a recurring pattern on workdays, under the Valentines' view Nicole did not make regular

---

**3.** In addition to generally arguing that the exclusion referenced in note 1 is ambiguous as drafted, the Valentines have particularly targeted the exclusion's use of the phrase "regular use" as being ambiguous.  Thus, the thrust of their argument on appeal is that because of ambiguities in the policy's language, the court should have re-

solved the coverage issue in favor of the insured. *See, e.g., Nielsen v. O'Reilly*, 848 P.2d 664, 665–66 (Utah 1992).  Although the Valentines argue about the meaning of the term "regular use" as it appears in the exclusion, their argument equally applies to the term as it appears in the policy's definitions section.

use of the Parts Plus truck because she did not have unfettered use of the truck, nor was she able to use it as she would customarily use her own personal vehicle.[4]

¶ 11 We are not persuaded that the Valentines' view of the phrase "regular use" reflects the "usual and ordinarily accepted meaning" of the words. *Bergera*, 524 P.2d at 601. Rather, the phrase "regular use" connotes use that is consistent with a recurring pattern or uniform course of conduct or dealing. *See Peace v. Allstate Ins. Co.*, 137 Ariz. 490, 671 P.2d 931, 935 (Ct.App.1983) (using the dictionary to define regular as " '[s]teady or uniform in course, practice or occurrence; returning, recurring or received at stated, fixed or uniform intervals' ") (citation omitted); *North Carolina Farm Bureau Mut. Ins. Co. v. Warren*, 326 N.C. 444, 390 S.E.2d 138, 140–41 (1990) (relying on a similar dictionary definition to support the conclusion that a recurring pattern of a vehicle's use constituted regular use of that vehicle). The phrase also denotes " 'customary use as opposed to occasional use or special use.' " *Peace*, 671 P.2d at 934 (quoting *Travelers Indem. Co. v. Hudson*, 15 Ariz.App. 371, 488 P.2d 1008, 1012 (1971)). *See also McGuire v. Draughon*, 170 N.C.App. 422, 612 S.E.2d 428, 431 (2005) (stating that "the regular use exclusion does not apply to the 'casual,' 'occasional,' or 'infrequent' use of another vehi-

cle"). Thus, the phrase "regular use," by its ordinary and usual meaning, embodies use that is marked by a pattern of usage or some frequency of usage rather than a use that is unfettered or without limitation.[5] As one court has stated, the question of whether a vehicle has been furnished or is available for an insured's regular use hinges mostly on determining "whether there is a consistent pattern of use or availability of the other vehicle," and "a minimum level of frequency" of use is required as well. *Safety Ins. Co. v. Day*, 65 Mass.App.Ct. 15, 836 N.E.2d 339, 345 (2005). *See New York Cent. Mut. Fire Ins. Co. v. Jennings*, 195 A.D.2d 541, 600 N.Y.S.2d 486, 487 (1993) (mem.) (considering "the general availability of the vehicle and the frequency of its use" as important factors for determining "[w]hether a car has been furnished for regular use").

¶ 12 We are also persuaded that the Valentines' take on the meaning of regular use is out of step with what has generally been viewed by courts as the purpose for including the phrase in insurance policies, i.e., to prevent an increase in the amount of risk an insurance company undertakes to insure without a corresponding increase in premium paid. *See, e.g., Benjamin v. Plains Ins. Co.*, 650 F.2d 98, 100 (5th Cir.1981) (per curiam) ("To cover a non-owned vehicle regularly

---

4. We note that we are aware of only two precedential Utah cases that can be said to have even tangentially treated the phrase "regular use" as used in insurance policies. *See Mann v. Preferred Risk Mut. Ins. Co.*, 14 Utah 2d 282, 382 P.2d 884 (1963); *Hill v. Farmers Ins. Exch.*, 888 P.2d 138 (Utah Ct.App.1994), *cert. denied*, 899 P.2d 1231 (Utah 1995). Neither of the cases, however, definitively construed the phrase "regular use." *Mann* suggests that an insured's "custom" of use of a non-owned vehicle may have some bearing on whether the use qualifies as regular use, 382 P.2d at 885, but is otherwise of very little value to the case at hand. Likewise, *Hill*, though applying an exclusionary clause that included the phrase "regular use" to preclude insurance coverage, does not indicate that the exclusion applied specifically because of the "regular use" language. 888 P.2d at 141. Although this court directly addressed some of the possible meanings of "regular use" in *Metropolitan Property & Liability Insurance Co. v. Finlayson*, 751 P.2d 254 (Utah Ct.App.1988)—concluding that, given the two possible meanings the parties proposed, the phrase "regular use" was ambiguous, *see id.* at 258—we subsequently vacated that opinion be-

cause the parties settled after we granted a rehearing. *See Metropolitan Prop. & Liab. Ins. Co. v. Finlayson*, 766 P.2d 437 (Utah Ct.App.1989) (per curiam).

5. That is not to say, however, that an insured's ability to use an employer's vehicle without limitation, or as she would normally use her own vehicle, would have no bearing on the regular use determination. An employee's unrestricted use of an employer's vehicle for any and all purposes—not just for employment purposes—would strongly indicate that the vehicle has been furnished or made available for the insured's regular use. In fact, the cases the Valentines cite in support of their reading of the phrase "regular use"—to the extent they do actually support their position—tend to stand more for the proposition that "the restrictions, if any, placed upon the vehicle's use" is but one factor in the regular use determination, rather than the notion that the presence or absence of such restrictions controls the regular use question. *American States Ins. Co. v. Tanner*, 211 W.Va. 160, 563 S.E.2d 825, 832 (2002).

used by an insured would cause the insurance company to have to insure vehicles for which the insured did not pay insured premiums."); *Turner v. Aetna Cas. & Sur. Co.*, 36 Mass.App.Ct. 921, 628 N.E.2d 29, 31 ("A regular use exclusion affords coverage for occasional or incidental use of other than vehicles owned by the insured without the payment of an additional premium, but excludes the habitual use of other cars, which would increase the risk on the insurer without a corresponding increase in the premium.") (alterations, internal quotations, and citation omitted), *review denied*, 418 Mass. 1103, 636 N.E.2d 279 (1994); *Jennings*, 600 N.Y.S.2d at 487 (stating that the purpose of the regular use language in a policy was "to provide protection to the insured for the occasional or infrequent use of a vehicle not owned by him or her" and not to allow the policy to act as "a substitute for insurance on vehicles furnished for the insured's regular use"); *Grange Ins. Ass'n v. MacKenzie*, 103 Wash.2d 708, 694 P.2d 1087, 1089 (1985) ("An insurance company's legitimate interest is in preventing an increase in the quantum of risk without a corresponding increase in the premium[.]"). Accordingly, a number of courts have held, under appropriate facts, that vehicles furnished by employers to employees for work purposes have been furnished or made available to employees for their regular use, thereby excluding the vehicles from coverage under the employees' personal automobile insurance policies. *See* 8A Lee R. Russ & Thomas E. Segalla, *Couch on Insurance 3d* § 121:75 (2005) (compiling cases treating "regular use" in the context of an employee's use of employer's vehicle); *Home Ins. Co. v. Kennedy*, 152 A.2d 115, 118–19 (Del.Super.Ct.1959); *Dardar v. Prudential Prop. & Cas. Ins. Co.*, 739 So.2d 330,

334 (La.Ct.App.), *writ denied*, 750 So.2d 195 (La.1999); *Liberty Mut. Ins. Co. v. Allstate Ins. Co.*, 237 A.D.2d 260, 654 N.Y.S.2d 403, 404 (1997) (mem.). Indeed, as has been observed elsewhere,

> [i]n employment situations, the family automobile policy is not designed to cover an employer's vehicle regularly used by the employee for employment purposes (the employer should cover these risks), or an employer's vehicle regularly used by the employee for personal purposes (the employee should cover these risks at an additional premium if the employer does not cover them).

*Dardar*, 739 So.2d at 334. *Accord Auto Owners Ins. Co. v. Miller*, 138 Ill.2d 124, 149 Ill.Dec. 260, 561 N.E.2d 630, 632–33 (1990).[6]

¶ 13 We therefore decline to say that the phrase "regular use," as used in the Valentines' policy, is ambiguous in the context of the undisputed facts of record. And because under the undisputed facts Nicole's recurring pattern of use of the Parts Plus truck and the frequency with which she used the truck constitute regular use as a matter of law, we need not refine further the precise meaning of the term "regular use" for purposes of this case.

¶ 14 Nicole's use of the Parts Plus truck—or a similar vehicle from the Parts Plus fleet—was consistent with a definite pattern and uniform course of conduct. Her use of the truck was also frequent as opposed to occasional. Indeed, the truck was specifically furnished and available to Nicole each workday to make her assigned deliveries, and at the time of the accident, Nicole's use of the truck was entirely consistent with that recurring pattern.[7] We are therefore satisfied

---

6. The Valentines assert that we should not rely on many of the cases of other jurisdictions that have analyzed similar "regular use" phrasing because they have been decided in the context of parties seeking *liability* coverage under the insurance policy of the tortfeasor and not in the context of an injured party seeking UIM benefits under his or her own personal insurance policy. The Valentines suggest that the phrase regular use should be construed more liberally in favor of UIM coverage. Nevertheless, we are persuaded that the "regular use" language applies similarly enough in both contexts to justify reliance on cases decided in either context. *See Galvin v.*

*Amica Mut. Ins. Co.*, 11 Mass.App.Ct. 457, 417 N.E.2d 34, 36 (1981) ("[W]e regard the decisions with respect to the regular use exclusion in 'drive other cars' provisions and in other types of motor vehicle coverage as applicable to the similar regular use exclusion under the uninsured motorist provisions.").

7. Because Nicole's use of the truck at the time of the accident fell within the perimeters of the employment purpose for which it had been regularly furnished or made available, we need not say what effect, if any, an unauthorized deviation from that custom—e.g., if she had instead been

that the undisputed facts show that the Parts Plus truck was furnished or available for Nicole's regular use.

## CONCLUSION

¶ 15 We decline to conclude that the phrase "regular use" as used in the Valentines' policy is ambiguous based on the alternative meaning the Valentines advance for the phrase. We instead conclude that "in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy," *Nielsen v. O'Reilly,* 848 P.2d 664, 666 (Utah 1992) (internal quotations and citation omitted), Nicole made regular use of the Parts Plus truck and is therefore precluded from recovering UIM benefits under the plain language of the Valentines' insurance policy.

¶ 16 Affirmed.

¶ 17 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and CAROLYN B. McHUGH, Judge.

driving the truck back to work from a quick afternoon visit to the local mall—would have on

our conclusion here.